Walter M. HARRISON, Plaintiff in Error,

v.

R. Lewis BARTON, Richard W. Camp, Sheldon L. Stirling and Edward H. Moler, Trustees of Oklahoma City Municipal Improvement Authority, a public charitable trust, The City of Oklahoma City, Greater Oklahoma City, Inc., a corporation, The First National Bank and Trust Company of Oklahoma City, and The Fidelity National Bank and Trust Company of Oklahoma City, Defendants in Error.

No. 39414.

Supreme Court of Oklahoma.

Dec. 19, 1960.

Leon S. Hirsh, James C. Harkin, Oklahoma City, for plaintiff in error.

Edward H. Moler, Municipal Counselor of Oklahoma City, George J. Fagin, Oklahoma City, for defendants in error.

WELCH, Justice.

The city of Oklahoma City for years owned and operated a water distribution system in the City; and to serve imperative needs the City recently acquired and completed a large water reservoir near Atoka, more than one hundred miles from the City.

To make desirable provision for construction of a water transportation system from "reservoir" to City, and to pay the costs thereof and to provide for continuing distribution of water in the City there was created the Oklahoma City Municipal Improvement Authority, a public charitable trust, with R. Lewis Barton and Richard W. Camp, business men of the City, and Sheldon L. Stirling, City Manager, and Edward H. Moler, City Attorney, as the four Trustees of said Authority-Trust.

The City Council by appropriate ordinances accepted a beneficial interest in and of such Authority-Trust, as beneficiary thereof. City then leased to Authority-Trust its water distribution system and authorized Authority-Trust, among other things, (1) to issue bonds to provide funds to construct a prescribed water transportation system from "reservoir" to City, (2) to construct such transportation system under appropriate contracts and to operate same, and City's waterworks system, and to collect appropriate charges or fees from water users in City, (3) to pledge the revenues from such operation to pay the issued bonds, (4) to return to City all such constructed facilities and water distribution system when such revenue bonds had been fully paid.

All of the foregoing was evidenced and implemented, by a Trust Indenture executed by the four Trustees, by Ordinances of City, by a Lease Agreement executed between Trustees and the City, and by a Bond Indenture.

In this action after full pleadings asserting appropriate allegations and denials, trial was had to the court.

There was substantial evidence by oral testimony, and documents identified and introduced, and after complete trial the court made detailed findings of fact set out in twenty-one paragraphs summarized as follows:

1. The Authority-Trust was created under applicable law because of the necessity for extension of the City's utilities and water supply by reason of the increased population and area, and the existing water supply conditions; such need and necessity was set forth in detail in Article 1 of the Lease Agreement as of August 1, 1960, between the Trustees and the City, which recited the City's ownership of "reservoir" with a capacity of forty-one billion gallons of water; City's prior purchase of part of the land needed for the Elm Creek Reservoir; the purchase of much of the remaining land by the Oklahoma City Chamber of Commerce for conveyance to the City, and the purchase by City of a part of the pipe line right of way and the great public emergency that would exist in the event of drought, such as has been experienced in past years.

2. As of August 1, 1960, the City entered into a Trust Indenture with the Trustees whereby the Trust was created for the use and benefit of the City, and for the public purposes therein specified.

3. That the purposes of the Trust as set forth in the Trust Indenture were, among other things, to finance, acquire, construct, operate and maintain, improve and extend public utility properties, within or without the City, including water, sewer, garbage and trash disposal facilities for use by the United States of America, or the State of Oklahoma, or by authority for agencies of the United States or Oklahoma, or any municipality thereof, or any political subdivisions, including the beneficiary of

said Trust, the City of Oklahoma City; and to pay the surplus revenues from the operation of such properties to the City of Oklahoma City.

4. The Trust Indenture refers to and describes the property of the Trust Estate as (1) "Any funds and property in the hands of the Trustees or to be acquired or constructed by them, and dedicated by the Trustor and others to be used for Trust purposes, (2) all leasehold rights passing to the Trustees from the beneficiary (3) any money, property and all other things of value coming into the possession of the Trustees pursuant to the provisions of the Trust Indenture, and (4) a tract of real property which was specifically described."

5. The Trust Indenture provides that in case of a tie vote among the four Trustees the matter shall be decided by a majority of the governing body of the City by resolution.

6. The Trust Indenture provides that in acting upon construction bids, the Trustees shall have authority to reject all bids and readvertise for bids, or enter into contract with the responsible bidder or bidders who in the opinion of the Trustees shall offer the terms deemed most favorable to the Trust Estate.

7. On August 16, 1960, by Ordinance 9052, the City approved the Trust Indenture, and accepted the Trust as the beneficiary thereof.

8. On August 23, 1960, by Lease Agreement as of August 1, 1960, the City leased to the Trustees the water system of the City under specified terms, for forty years, or to such date as indebtedness incurred by the Trustees pursuant to a certain Bond Indenture, hereafter referred to, has been paid or provision made for such payment, whichever is later.

9. On August 22, 1960, a Bond Indenture dated as of August 1, 1960, was executed between Trustees and the First National Bank & Trust Company, and the Fidelity National Bank & Trust Company, both of the City.

10. The Bond Indenture pledges and assigns to the Banks the revenue of the Trust Estate for the payment of the bonds which may be issued and sold to provide funds for construction expense. There is a recital as to a grant, conveyance and pledge of the physical properties of the Trust Estate. The court specifically found that a proper construction was that this constituted only an assignment of the revenue to the bank even in the event of default. (This fact finding No. 10 will be specifically discussed further in this opinion.)

11. That the City by Ordinance No. 9074 on September 6, 1960, cancelled its prior lease of the city water system to the Oklahoma City Development Trust dated April 12, 1960; and approved and authorized the lease agreement of August 1, 1960, and approved and accepted the Bond Indenture dated as of August 1, 1960 (this latter lease agreement being the same as referred to in finding of fact No. 8, and the Bond Indenture being the same as referred to in fact finding No. 9).

12. That the Trustees of the Oklahoma City Development Trust (a prior Trust separate and distinct from the Authority-Trust here involved) had on April 12, 1960, entered into a construction contract with the Atoka Water Contractors Company and had accepted a proposal from John Nuveen & Company, and Associates, to purchase said Trustees' bonds to finance the cost of such improvements; that said Trustees of the said prior Trust had on said date executed a lease agreement with the City whereby the City leased to the said Trustees of said prior trust the water system of the City, and executed a Bond Indenture with the First National Bank and Trust Company of City for the security of such bonds.

13. There followed litigation concerning this prior Trust, The Oklahoma City Development Trust, including case No. 39,094, in the Supreme Court of Oklahoma, which was an application to that court to assume original jurisdiction and consider the prior-

Trust and its various actions heretofore referred to in reference to the Atoka Water Project. There were a number of intervenors. The Supreme Court declined to take original jurisdiction in this action. Thereafter a new Public Trust was formed, being the Oklahoma City Municipal Improvement Authority-Trust here involved. On August 16, 1960, the City Council by resolution appointed the four Trustees for this new Trust or Authority-Trust, and directed them to proceed as provided in the Trust Indenture relative to the proper construction, extension and improvement of the overall waterworks system or utility of the City. Any further action by the Trustees of the prior Trust was restricted. It was provided that the Trustees of the new Trust, the Authority-Trust, should advertise for construction bids, with power in the Authority-Trust to employ engineers for the various engineering services needed. The Authority-Trust was authorized to accept the assignment of the bond purchase contract of John Nuveen & Company.

14. The Trustees of the Authority-Trust here involved on August 16, 1960, accepted an assignment from the Trustees of the prior Trust of the Lease Agreement executed on April 12, 1960, the Bond Indenture above referred to, between the Trustees of the prior Trust and the First National Bank and Trust Company of City, the bond sales contract with John Nuveen & Company, dated April 12, 1960, and the construction contract between Trustees of the prior Trust, and the Atoka Water Contractors Company.

15. On August 16, 1960, John Nuveen & Company consented to the assignment of the bond sales contract, (referred to in finding of fact No. 14,) and agreed that the provisions of such contract extended to December 31, 1960, would remain in full force and effect as to bonds to be issued by the Trustees of the present Authority-Trust. There was provision for some further extension of time and for increase in the principal amount of such bonds to $65,000,-000. The above and foregoing was accepted by the Trustees of the present Authority-Trust on the same day, August 16, 1960, on the terms and conditions therein specified.

16. On August 16, 1960, the Lease Agreement, Bond Indenture and Construction Contract executed April 12, 1960, involving the prior trust, were all cancelled by agreement of all parties.

17. By testimony and written stipulation between the Trustees of the Authority-Trust and John Nuveen & Company admitted in evidence it was shown that John Nuveen & Company would purchase such bonds regardless of who might be the best responsible bidder for construction work and a certain provision written into the Nuveen contract when it was prepared under the prior trust should be considered as deleted. Further explanation was made to show that John Nuveen & Company had no arbitrary right to delay delivery date of any bonds, but should have protection against unforeseen contingencies beyond the control of the parties to said stipulation which might occur that could cause delay in the mechanical procedure in preparation and delivery of said bonds, etc. There was further reference to the increase of the amount of bonds to a possible $65,000,-000.

18. The official actions of the Trustees of the Oklahoma City Municipal Improvement Authority have been performed at public meetings and without concealment and the minutes of each meeting have been submitted to the Court.

19. On the 23rd day of August, 1960, it was resolved by the Trustees of the Oklahoma City Municipal Improvement Authority that none of the revenues or property of the water system of the City of Oklahoma City will be transferred or delivered, pursuant to the Bond Indenture executed August 22, 1960, to the Banks as Corporate Trustees under the Bond Indenture, until Trustees Bonds are issued pursuant to said Bond Indenture. This resolution was accepted by the First National Bank and Trust Company of Oklahoma

City and the Fidelity National Bank and Trust Company of Oklahoma City on the 23rd day of August, 1960.

20. The Trustees utilized the aid of attorneys in matters pertaining to the Trust Indenture, Lease Agreement and Bond Indenture, and in relation thereto and in their administration of the trust they exercised sound judgment and prudence, due care and diligences; and the plaintiff has failed to establish any bad faith, concealment, bad judgment, imprudence or other breach of duty on the part of the Trustees or any facts which would support the allegations of his petition in such regard. For the Court to interfere in the administration of the Trust as it has been administered by the Trustees would be without benefit to the Trust. By reason of the foregoing the administration of the Trust has been proper and should be approved.

21. The defendants filed an answer and cross-petition wherein the defendants generally denied the allegations of plaintiff's petition except the defendants admitted that the defendants are all of the persons designated by name in the Trust Indenture, the beneficial interest of which was accepted by the governing body of the City of Oklahoma City by Ordinance No. 9052 and admitted that the Trustees have arranged to lease from the City its entire Municipal Water System effective August 1, 1960, and that on August 22, 1960, the Lease Agreement was executed, and also admitted the accuracy of copy of the Trust Indenture, Lease Agreement and Bond Indenture, attached to plaintiff's petition; and sought affirmative adjudication, that the said Trust Indenture, Lease Agreement and Bond Indenture and the bonds to be issued pursuant thereto and Ordinances Nos. 9052 and 9074 of the City of Oklahoma City referred to herein, are valid instruments in accordance with their terms and the Constitution and laws of the State of Oklahoma and for such other relief as to which they may be entitled. The plaintiff joined issue with the defendants by general denial admitting the verity of Ordinances No. 9052 and No.

9074. The court finds it has jurisdiction to declare the validity of such instruments, and that defendants have sustained the allegations of their cross-petition and that each of such instruments are valid and that Trustees Bonds issued pursuant thereto will be valid and binding obligations.

Thereafter the trial court made and filed written conclusions of law in fifteen paragraphs as copied here.

"1. Title 60, Oklahoma Statutes 1951, Sections 175.23 and 176 to 180, both inclusive, and as amended, authorize this action to be brought and defendants to request and secure the relief prayed for in their cross-petition.

"2. In relation to Finding of Fact No. 5, supra, it is determined by the Court that the provisions referred to in the Trust Indenture dated August 1, 1960, relative to how and in what manner a tie-vote shall be resolved, shall be construed to mean that in the event there shall at any time be a tie-vote upon any manner under consideration by the Trustees, the matter under consideration shall be submitted to the persons then constituting the governing body of The City of Oklahoma City, and the persons then constituting the governing body of the City shall cast the deciding vote by resolution adopted by the persons then constituting the governing body of the City by a majority of not less than (5) affirmative votes, and a certified copy of such resolution filed with the Trustees shall be considered as the vote of the persons then constituting the governing body of the City, and the question on which such tie-vote occurred shall ipso facto be decided by the vote of the persons then constituting the governing body of the City, cast as above provided.

"3. In relation to Finding of Fact No. 6, supra, it is determined by the Court that the provision referred to in the Trust Indenture dated August 1, 1960, shall be construed to mean the following:

"The Trustees may reject all bids and readvertise for bids. As to the bids initially invited or those readvertised for, the Trustees may enter into a contract or contracts with a responsible bidder or bidders who, in the opinion of the Trustees, shall offer the terms deemed most favorable to the Trust Estate, only upon the proposal, plans and specifications so advertised or readvertised.

"4. In relation to Finding of Fact No. 10, supra, and in view of the testimony before the Court and the provisions in the Trust Indenture executed August 1, 1960, the Lease Agreement executed August 23, 1960, and Bond Indenture executed August 22, 1960, it is determined by the Court that the extent and manner of the grant to the Bank, as set out in the Bond Indenture, is only a pledge of the revenues of the Trust Estate, even in the event of default and said instruments are by the Court given this construction.

"5. The Oklahoma City Municipal Improvement Authority, a Public Trust, created under a Trust Indenture, which is subject to a portion thereof construed by the Court, dated as of August 1, 1960, by and between Greater Oklahoma City, Inc., as Trustor, and Sheldon L. Stirling, Edward H. Moler, Richard W. Camp and R. Lewis Barton, to be known as Trustees of the Oklahoma City Municipal Improvement Authority was legally created and is a valid trust under the laws of Oklahoma with The City of Oklahoma City as the beneficiary thereof.

"6. The Lease Agreement dated as of August 1, 1960, entered into by and between The City of Oklahoma City and the Trustees of the Oklahoma City Municipal Improvement Authority leasing the existing water system of The City of Oklahoma City to the Trustees and operation thereof as therein provided, including the determination of the amount of, the collec-

tion of and disposition of the revenues therefrom, are for purposes authorized by law and said Lease Agreement is a valid lease of said properties, and the terms and provisions set out in said Lease Agreement are valid under the Constitution and laws of the State of Oklahoma, and said Lease Agreement is in full force and effect.

"7. The Bond Indenture, which is subject to the portion thereof construed by the Court, dated as of August 1, 1960, entered into by and between the Trustees of the Oklahoma City Municipal Improvement Authority and The First National Bank and Trust Company of Oklahoma City and The Fidelity National Bank and Trust Company of Oklahoma City, providing for the issuance of Trustees Bonds and securing the payment of such Trustees Bonds, is a valid and binding instrument in accordance with its terms, and bonds that are issued pursuant thereto and a supplemental bond indenture executed in compliance with the provisions of said Bond Indenture will be valid and binding obligations of the Trustees in accordance with their terms.

"8. Ordinance No. 9052 enacted by the City Council of The City of Oklahoma City, on August 16, 1960, (pertaining to the approval, acceptance and execution of the Trust Indenture, executed August 1, 1960); and Ordinance No. 9074 enacted by the City Council of the City of Oklahoma City, on September 6, 1960 (pertaining to the approval, acceptance and execution of the Lease Agreement, executed August 23, 1960, and Bond Indenture, executed August 22, 1960), are valid instruments in accordance with their terms.

"9. The Trustees of said Trust are an agency of the State of Oklahoma and regularly constituted authorities of the beneficiary, The City of Oklahoma City, for the performance of the purposes set forth in the Trust Indenture

creating the Oklahoma City Municipal Improvement Authority.

"10. The indebtedness proposed to be incurred by the Trustees under and by virtue of the Trust Indenture, which is subject to the portion thereof construed by the Court, Lease Agreement and Bond Indenture of the Oklahoma City Municipal Improvement Authority, which is subject to the portion thereof construed by the Court, secured as to payment as provided in such instruments and supplemental bond indentures executed in compliance with the provisions of said Bond Indenture will be valid and legally binding and will not create an indebtedness of a nature prohibited by the Constitution or laws of the State of Oklahoma.

"11. The underwriting contract dated April 12, 1960, for the sale of the Trustees Bonds to John Nuveen & Co., (Inc.) and other underwriters, to secure sufficient funds to finance the cost of the Atoka Water Project and assigned to the Trustees of the Oklahoma City Municipal Improvement Authority and extended by agreement of said Trustees and underwriters to December 31, 1960, as negotiated by the Trustees, is a valid contract and is not forbidden by the provisions of the Trust Agreement or by law.

"12. That the mutual intent of all the parties to the contract for the purchase and sale of Trustees Bonds date April 12, 1960, as assigned to the Trustees of the Oklahoma City Municipal Improvement Authority and as extended by the parties thereto, and the construction and interpretation placed upon said contract by said parties should be recognized and given effect by the Court, as set out in findings of fact No. 17.

"13. The determination by the Trustees of said Trust of the approval of the foregoing instruments is one within the discretion of the Trustees, based upon an honest exercise of their judgment, and the Court should not interfere with such exercise of discretion in the absence of evidence of fraud, collusion or abuse of discretion.

"14. The Trustees acted honestly, in good faith and in the best interest of the beneficiary and the Trust Estate, and exercised sound judgment and prudence, due care and diligence in their administration of the Oklahoma City Municipal Improvement Authority, and each manifested the care, skill, prudence and diligence that an ordinarily prudent man would exercise in similar business affairs.

"15. The Trustees, having submitted to this Court all of their actions relating to the administration of the Oklahoma City Municipal Improvement Authority, and all facts in connection therewith having been examined by the Court and found to be for the best interests of the Beneficiary and the Trust Estate, the Court will approve the actions of the Trustees and the Trust Indenture, (subject to the portion thereof construed by the Court), the Lease Agreement and Bond Indenture (subject to the portion thereof construed by the Court), and the indebtedness to be incurred pursuant thereto in order for the Trustees to be able to carry out the duties imposed upon them."

Thereupon the trial court rendered judgment for the defendants evidenced by journal entry which, after usual formal statements, concluded as follows:

"On this 26th day of September, 1960, the Court, being fully advised in the premises, issued Findings of Fact and Conclusions of Law which is attached hereto marked Exhibit 'A' and hereby made a part of this Journal Entry of Judgment.

"It Is Hereby Ordered, Adjudged And Decreed By The Court that the attached Findings of Fact and Conclusions of Law marked Exhibit 'A' is

hereby made the Judgment and Decree of the Court herein.

"It Is Ordered, Adjudged And Decreed By The Court that Plaintiff take nothing by reason of his said petition herein and the relief prayed for by Plaintiff be denied.

"It Is Further Ordered, Adjudged And Decreed By The Court that all issues be decided in favor of Defendants on their cross-petition, as follows:

"(1) The Oklahoma City Municipal Improvement Authority, a public trust, created under a Trust Indenture (which is subject to a portion thereof construed by the Court in said Findings of Fact and Conclusions of Law), dated as of August 1, 1960, by and between Greater Oklahoma City, Inc., as Trustor, and Sheldon L. Stirling, Edward H. Moler, Richard W. Camp and R. Lewis Barton, to be known as Trustees of the Oklahoma City Municipal Improvement Authority, was legally created and is a valid trust under the laws of Oklahoma with the City of Oklahoma City as the beneficiary thereof.

"(2) The Lease agreement dated as of August 1, 1960, entered into by and between The City of Oklahoma City and the Trustees of the Oklahoma City Municipal Improvement Authority leasing the existing water system of The City of Oklahoma City to the Trustees and operation thereof as therein provided, including the determination of the amount of, the collection of and disposition of the amount of, the collection of and disposition of the revenues therefrom, are for purposes authorized by law and said Lease Agreement is a valid lease of said properties, and the terms and provisions set out in said Lease Agreement are valid under the Constitution and laws of the State of Oklahoma, and said Lease Agreement is in full force and effect.

"(3) The Bond Indenture (which is subject to the portion thereof construed by the Court in said Findings of Fact and Conclusions of Law), dated as of August 1, 1960, entered into by and between the Trustees of the Oklahoma City Municipal Improvement Authority and the First National Bank and Trust Company of Oklahoma City and the Fidelity National Bank and Trust Company of Oklahoma City, providing for the issuance of Trustees Bonds and securing the payment of such Trustees Bonds, is a valid and binding instrument in accordance with its terms, and bonds that are issued pursuant thereto and a supplemental bond indenture executed in compliance with the provisions of said Bond Indenture will be valid and binding obligations of the Trustees in accordance with their terms.

"(4) Ordinance No. 9052 enacted by the City Council of the City of Oklahoma City, on August 16, 1960, (pertaining to the approval, acceptance and execution of the Trust Indenture, dated as of August 1, 1960); and Ordinance No. 9074 enacted by the City Council of The City of Oklahoma City, on September 6, 1960, (pertaining to the approval, acceptance and execution of the Lease Agreement, dated as of August 1, 1960, and Bond Indenture, dated as of August 1, 1960), are valid instruments in accordance with their terms."

Referring back to Findings of Fact No. 10 we observe, as the trial court found, that the actual purpose was to assign the revenues to the Banks out of which revenue the bonds would be paid. It is apparent that reference was made to the physical properties of the Trust Estate to make doubly sure that the Banks could actually receive and collect the revenues. There was no purpose to pledge these physical assets to the Bank in a sense that the Banks could foreclose any such pledge and obtain title to the City Water Works and the Atoka Water Project to own and operate the same as a private enterprise as might ordinarily occur where physical

property is pledged and there is a default and a foreclosure. It seems wholly proper to us for the trial court to make it plain that the only thing pledged to the Banks is the revenue to be derived from these facilities.

Referring back to Findings of Fact No. 17 we observe that the bond sale contract of April 12, 1960, executed between John Nuveen & Company and the Trustees of the prior Trust was drafted and executed at a time when it was contemplated that a construction contract for the Atoka Project would be executed between the Trustees of that prior Trust and the Atoka Contractors Company, and for that reason the Nuveen contract drafted at that time was contingent upon or made reference to the fact the construction work would be done by the Atoka Water Contractors Company. However, when the new or present Authority-Trust was created, and the operation under and by the prior Trust was set aside or abandoned, it was specifically provided that the Trustees of the new Authority-Trust would enter into no construction contract until after advertisement and competitive bidding. Therefore when the Nuveen contract was assigned to the new Authority-Trust no one could know who would be the construction contractor, and therefore this reference in the Nuveen contract to any construction work by the Atoka Water Contractors Company would be wholly unrealistic and ineffective as between Nuveen and the new Authority-Trust. Therefore, of course, it was proper that such reference to the Atoka Water Contractors Company be considered as deleted from the Nuveen contract.

On this appeal there seems to be no attack on the validity or legality of purpose of the Authority-Trust. It seems that such legality and validity as a charitable trust is demonstrated and conceded in view of our Statute 60 O.S.1951 § 176–180, as amended by Laws 1953, and the former decisions of this court in Board of County Com'rs of Oklahoma County v. Warram, Okl., 285 P.2d 1034; Morris v. City of

Oklahoma City, Okl., 299 P.2d 131; Woodward v. City of Anadarko, Okl., 351 P.2d 292, 293, and Meder v. City of Oklahoma City, Okl., 350 P.2d 916.

On this appeal plaintiff in error does attack or question several actions of Authority-Trust, and questions generally and in some instances specifically, whether the actions of the Trustees here involved, measure up to the requisite standard of fiduciary responsibility so as to merit judicial approval.

Some question is raised as to the propriety of the pledge made to the Banks for payment of bonds which may be issued and sold to pay construction expense. That pledge was dealt with, upon the consideration of all contentions, in trial court Findings of Fact No. 10, and generally in Findings of Fact No. 20, and in Conclusions of Law No. 4. We are not presented with either authorities or convincing argument that there is any invalidity or impropriety in such pledge.

Complaint is made as to the manner and verbiage in which competitive bidding on construction work is required. This was referred to in some detail in the trial court's Findings of Fact No. 6, and in Conclusion of Law No. 3. Such language or similar language is frequently found in city charters or ordinances or statutes. Such language seems to us to be ordinary and usual in order to give a contracting public body or entity or agency proper control over the letting of construction projects after competitive bidding. We find no illegality, invalidity or impropriety therein.

Some suggestion is made of inaccuracies or errors or incomplete provisions in the Lease Agreement from the City to the Authority-Trust and in the Bond Indenture. However, in view of all of the provisions of those documents, and in view of the findings of fact in the trial court, we are convinced that both of those documents are sufficient to accomplish the plans and purposes intended thereby.

The plaintiff in error cites authorities supporting the rule that,

"The duties of the trustee of a charitable trust are similar to those of trustees of a private trust

" * * *. The Trustees are under a duty to exercise due diligence in the administration of the trust and are under a duty not to delegate the administration to others."

█ And the conclusion is stated that all authorities support the statement that Trustees, whether of a charitable or private trust, are inescapably burdened with the positive responsibility of exercising prudence in administering the trust. It is said that some decisions place an even higher measure of sagacity upon them in pursuance of the maintenance of the high level of integrity required by the trust relationship. We agree with those expressions of legal rules and philosophy. We are convinced from the Findings of Fact and Conclusions of Law that the trial court had these principles in mind and applied them in determining this case and in approving in such full measure, the actions of the Trustees.

We are favored with extensive briefs by the parties and we have heard the parties in comprehensive oral argument. Upon consideration thereof and of the testimony and documentary evidence, we are convinced that this cause in the trial court was thoroughly well tried and truly determined, and that the trial court judgment should be in all things affirmed.

We approve the Findings of Fact of the trial court as fully supported by the evidence.

We approve the Conclusions of Law stated by the trial court and adopt them as the conclusions of law of this court in reference to this Trust and the documents and actions of the Trustees and parties here involved.

Upon the record and presentation of the parties we approve the actions of the Trustees of the Oklahoma City Municipal Authority in connection with the administration of this Trust, and affirmatively declare that the Trust Indenture as of August 1, 1960, between Greater Oklahoma City, Inc., as Trustor, and Sheldon L. Stirling, Edward H. Moler, Richard W. Camp and R. Lewis Barton, as Trustees, of the Oklahoma City Municipal Improvement Authority; the Lease Agreement dated as of August 1, 1960, by and between the City of Oklahoma City and said Trustees; the Bond Indenture dated as of August 1, 1960, by and between the said Trustees and the First National Bank and Trust Company of Oklahoma City and the Fidelity National Bank and Trust Company of Oklahoma City; and Ordinances Nos. 9052 and 9074 enacted by the City Council of the City of Oklahoma City are valid and binding instruments in accordance with their terms, and that bonds issued pursuant to the Bond Indenture and a Supplemental Bond Indenture executed in compliance with the provisions of said Bond Indenture will be valid and binding obligations of the Trustees in accordance with their terms.

Affirmed.

DAVISON, C. J., and HALLEY, JOHNSON, and JACKSON, JJ., concur.

BLACKBIRD and BERRY, JJ., concur by reason of Stare Decisis.

WILLIAMS, V. C. J., dissents.