Anna ARTHUR, Dan Badger, Allan Banks, Don W. Brown, Gene Brown, Larry T. Brown, Myral Bruner, Willma Bruner, George Carney, Irene Cummins, Richard L. Cummins, Clarence M. Cunningham, Janet K. Cunningham, Otis C. Dermer, Troy Dorris, Thora duBois, Sam B. Durham, Jr., M. J. Engh, Benny Evans, Robert M. Ewing, Bracie Fawcett, Justin J. Ferguson, George Gorin, Rebecca Ann Harris, Stephen M. Harris, E. E. Kohnke, Robert L. Kuhlman, Jr., Nelda Latham, Richard H. Leftwich, Carmen D. Lehnert, Katherine Macneil, James Maxwell, Nani Pybus, Ruth Florence Pybus, Elnor S. Ragan, William W. Rambo, John F. Stone, Stephen Tweedie, Margaret Vitek, Billy C. Wallace, Carol A. Wolfe, and John Wolfe, Appellants,

v.

The CITY OF STILLWATER and The Stillwater Utilities Authority, Appellees,

Dan McMahan, Amicus Curiae.

No. 54164.

Supreme Court of Oklahoma.

April 18, 1980.

Rehearing Denied May 23, 1980.

638

Pierce, Couch, Hendrickson, Johnston & Baysinger by John R. Couch, Jr., Oklahoma City, for appellants.

Daniel D. Draper, Jr., Stillwater, and Fagin, Brown, Bush & Tinney by Wm. Don Kiser, Oklahoma City, for appellees.

Chapel, Wilkinson, Riggs, Abney & Keefer by Louis W. Bullock, Tulsa, for amicus curiae.

HODGES, Justice.

This action was brought by a group of interested taxpayers [before the attorney general in his capacity as ex-officio Bond Commissioner [1] has approved or disapproved the general obligation bonds] to challenge the validity of an election authorizing the issuance of the bonds.

On April 16, 1979, the Board of Commissioners of the City of Stillwater, Oklahoma, adopted Ordinances No. 1834 and No. 1835. These ordinances provided for the leasing of the City's water, sewer, electric and solid waste disposal systems to the Stillwater Utilities Authority [Trust], a public trust created for the use and benefit of the City pursuant to 60 O.S.Supp.1976 §§ 176–180.3; and for the levy and assessment of an additional one cent sales tax on all taxable sales within the city. Four Propositions were submitted to the voters. Proposition 1 is not pertinent to this appeal. Proposition 2 proposed that the City of Stillwater be authorized to incur an indebtedness in an amount not to exceed $12 million dollars by issuance of general obligation bonds to provide a portion of the funds needed to construct additions and improvements to the City's water system; and to levy and collect an annual tax, in addition to all other taxes, upon all the taxable property in the City sufficient to pay the interest on the bonds to constitute a sinking fund for the payment of the principal. In Proposition 3 the voters were asked to empower the City to lease its water, sewer, solid waste and electric utility system to the Trust for a term of fifty years. It also proposed that the Trust be authorized to incur an indebtedness by issuance of revenue bonds in an amount sufficient, when combined with the $12 million dollars of general obligation bonds, to provide the funds to construct additions and improvements to the City's water system. Nothing on the ballot reflected that the total cost of the water project was from $25 to $30 million dollars, so that no definite upper limit on the amount of revenue bonds which might be issued by the Trust was endorsed by the electorate. Proposition 4 submitted the question of whether to authorize the City to levy and assess an additional one cent sales tax and to deposit the

---

1. It is provided by 62 O.S.1971 § 13:

"It shall be the duty of the Bond Commissioner to prepare uniform forms and prescribe a method of procedure under the laws of the State in all cases where it is desired to issue public securities or bonds, in any county, township, municipality or political or other sub-divisions thereof of the State of Oklahoma; and it shall be the further duty of said Bond Commissioner to examine into and pass upon any security so issued, and such security, when declared by the certificate of said Bond Commissioner to be issued in accordance with the

forms of procedure so provided shall be incontestable in any court in the State of Oklahoma unless suit thereon shall be brought in a court having jurisdiction of the same within thirty days from the date of the approval thereof by the Bond Commissioner."

In *Beauchamp v. City of Oklahoma City*, 477 P.2d 51, 55 (Okl.1970) this Court held that an action may be maintained to challenge the legality of a bond election prior to the performance of the Bond Commissioner passing on their validity.

revenues in a special trust account to be used by the trustees.[2]

All of the propositions were approved by a simple majority of the voters,[3] and the City began collecting the additional sales tax.

The taxpayers sought declaratory and injunctive relief which was denied by the trial court. They asserted that the sales tax ordinance, No. 1835, was null and void because it violated the Okla.Const. art. 10, § 26[4] as enumerated: 1) it was not ap-

**2.** The ballot provided:

# OFFICIAL BALLOT
## SPECIAL ELECTION
### City of Stillwater, Payne County, Oklahoma
## MAY 22, 1979
#### Stillwater Precinct 23

### PROPOSITION NO. 1

Shall the people of Stillwater, Oklahoma, rescind the authorization heretofore approved at an election held on December 5, 1972 for the incurrence of an indebtedness by the City of Stillwater in the amount of seven million dollars ($7,000,000) for the purpose of acquiring equipment for and constructing improvements, expansions, and repairs to the electrical generation system of said city?

1st ☐ For the above proposition

2nd ☐ Against the above proposition

### EXPLANATORY NOTE

There are three separate propositions to be voted upon in connection with the proposed Kaw Reservoir Water Project. A majority of the voters must vote "for" all the propositions or the total project fails.

### PROPOSITION NO. 2

Shall the City of Stillwater, Oklahoma, be authorized to incur an indebtedness by issuing its negotiable coupon bonds in such amounts not to exceed the sum of twelve million dollars ($12,000,000) to provide a portion of the funds which may be necessary when combined with the revenue bonds issued pursuant to Proposition 3 below to acquire, construct, extend and equip additions and improvements to the city's water system, said system to be owned exclusively by said city; and levy and collect an annual tax, in addition to all other taxes, upon all the taxable property in said city sufficient to pay the interest on said bonds as it falls due, and also to constitute a sinking fund for the payment of the principal thereof when due; said bonds to bear interest not to exceed seven and one-half percent (7½%) per annum, payable semiannually and to become due serially within twenty-five (25) years from their date?

1st ☐ For the above proposition

2nd ☐ Against the above proposition

### PROPOSITION NO. 3

Shall the City of Stillwater be authorized to lease its wate sewer, solid waste disposal and electric utility systems, together w. all additions and improvements thereto to the trustees of the Sti water Utilities Authority, a public trust, for a term of fifty (50) yea as more fully set out in Ordinance No. 1834 and shall the Stillwa: Utilities Authority be authorized to incur an indebtedness by the iss ance of its revenue bonds in an amount sufficient when combin with the general obligation bonds issued pursuant to Proposition N 2 above, if any, to provide funds for acquiring, constructing, exten ing and equipping additions and improvements to the city's wa system in compliance with the lowest and best bids and utilizin available state and federal assistance?

1st ☐ For the above proposition

2nd ☐ Against the above proposition

### PROPOSITION NO. 4

Shall the City of Stillwater Oklahoma, be authorized to levy assess a city sales tax of one percent (1%) in addition to all other and state sales taxes levied or assessed, upon the gross proceeds gross receipts derived from all sales to any person taxable under Sales Tax Law of Oklahoma as set out in Ordinance No. 1835; deposit the revenues therefrom in a special trust account to be u by the trustees of the Stillwater Utilities Authority for the purp of improving public utilities as set out in said Ordinance No. 183

1st ☐ For the above proposition

2nd ☐ Against the above proposition

**3.** The vote was as follows:

The vote on Proposition 2 was: 2,443 for  1741 against – 58%
The vote on Proposition 3 was: 2,176 for - 2001 against – 52%
The vote on Proposition 4 was: 2,113 for - 2076 against – 50.5%

**4.** It is provided by the Okla.Const. art. 10, § 26:

"Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the State, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and

proved by a ⅗ majority of the voters; 2) a legal obligation was incurred by the City to pay a debt which exceeded the income and revenue of the City for the fiscal year which is prohibited; and 3) sales tax revenues were pledged to the Trust for an indefinite period of time in excess of the permitted twenty-five year period. The taxpayers are also concerned that the direct payment of the tax revenues to the Trust and the prohibition of the payment of the tax revenues into the general fund constitute an effort to circumvent the statutory procedure of annual appropriation of tax revenues by municipalities. In addition, the taxpayers allege that the ballot language of Proposition 3 varied disastrously from that of Ordinance No. 1834 because it did not state that the Trust had an option to renew the lease for an additional fifty years, and that neither the ordinances nor the propositions disclosed the total amount of the project.

The parties agree that the invalidity of either ordinance will make it impossible to finance the total project, and that the proposed utilities will be owned exclusively by the municipality. The validity of the lease and the trust agreement are unchallenged by the taxpayers and are not a part of the record on appeal.

**I**

The argument of the taxpayers is premised on the assumption that art. 10, § 26 is applicable. The taxpayers' complaint, when boiled down to basics, is that if the election is validated an undetermined amount of money will be spent over an undisclosed period of time based on a simple majority of the voters who could not know what they were voting for. Their argument is premised on the assumption that art. 10, § 26 is applicable. This portion of the constitution prohibits any city from becoming indebted in any manner, or for any purpose, to an amount exceeding in any year, the income and revenue provided for such year without the assent of three-fifths of the electorate voting at the election.

■ We find art. 10, § 26 does not apply to Propositions 3 and 4. Proposition 3, which authorizes the City to lease its utility property to the Stillwater Utilities Authority, a public trust, does not create an indebtedness against the City. The indebtedness by the issuance of revenue bonds under the Trust is the indebtedness of the Trust, not the City. In *Harrison v. Barton*, 358 P.2d 211, 220 (Okl.1960) this Court held that where bonds are issued and sold by trustees of a public trust pursuant to a bond indenture, the bonds or proceeds therefrom did

revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum (5%) of the valuation of the taxable property therein to be ascertained from the last assessment for State and county purposes previous to the incurring of such indebtedness: Provided, that if a school district has an absolute need therefor, such district may, with the assent of three-fifths of the voters thereof voting at an election to be held for that purpose, incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding five per centum (5%) but not exceeding ten per centum (10%) of the valuation of the taxable property therein, to be ascertained from the last assessment for State and county purposes previous to the incurring of such indebtedness, for the purpose of acquiring or improving school sites, constructing, repairing, remodeling or equipping

buildings, or acquiring school furniture, fixtures or equipment; and such assent to such indebtedness shall be deemed to be a sufficient showing of such absolute need, unless otherwise provided by law. Provided, further, that any county, city, town, school district, or other political corporation, or subdivision of the State, incurring any indebtedness requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five (25) years from the time of contracting the same, and provided further that nothing in this Section shall prevent any school district from contracting with certificated personnel for periods extending one (1) year beyond the current fiscal year, under such conditions and limitations as shall be prescribed by law. As amended State Question No. 368, Referendum Petition No. 109. Adopted special election April 5, 1955.

not create or constitute a public debt, and that the bonds when issued were legal, valid and binding obligations of the Trust.

The city charter, Art. IV § 4.2(1)(2), required that the sale or lease of any city property valued at more than $50,000, or the lease of an entire public utility owned by the City, be made only by the authority of an ordinance approved at an election by an affirmative vote of a majority of the qualified electors of the City. The reason for placing Proposition No. 3 on the ballot was to gain the approval of the voters to lease the City's utilities to the Trust. There is no constitutional or statutory authority which requires that the electorate authorize the issuance of revenue bonds by the Trust. This language was surplusage on the ballot, and neither art. 10, §§ 26 or 27 were applicable. Therefore, the amount of the revenue bonds to be issued by the Trust did not need to be stated and a simple majority of the electorate was the only requirement for passage.

## II

■ The taxpayers argue that the adoption of Ordinance No. 1835 and the passage of the sales tax in Proposition 4 legally obligated the City to pay revenues to the trust for a period beyond the current year's revenue and constituted a proscribed indebtedness by the City. We disagree. There is no financial obligation imposed on the City other than to pay the sales tax revenues to the Authority for the fiscal year in which it is collected. There is no pledge or contingent encumbrance on the funds of the City beyond the fiscal year in which the sales tax funds are received, and pursuant to Ordinance No. 1835 § 3 the sales tax may be repealed at any time by a majority of the voters.[5]

## III

■ The allegation is made by the taxpayers that the transfer of funds as delineated by Ordinance No. 1835, which provides for the direct payment of tax revenues to the Trust and prohibits payment of the additional sales tax into the general fund, is an effort to circumvent the statutory procedures of annual appropriation of revenues by municipalities.[6] Title 11 O.S.Supp.1978 § 17–101 prohibits the transfer of funds unless there has been an appropriation in the manner provided by law. The taxpayers charge that 68 O.S.1971 § 2489, which requires all revenues from sources [other than ad valorem taxation except the proceeds from the sale of bonds and those revenues specifically required by law to be deposited into the sinking fund] be deposited in the general revenue fund of the city and that an annual levy be made to meet the city's obligations.

Except for ad valorem taxes, the City is authorized by 68 O.S.1971 § 2701 to assess taxes for general and specific purposes of the municipal government as the legislature may levy and collect for purposes of state government. This statute, together with 68 O.S.1971 §§ 1323 and 1324, permits the passage of the sales tax for the specific purpose of improving public utilities. However, compliance with 68 O.S.1971 § 2489 requires that all revenues be deposited in the general fund and appropriated annually by the city commissioners. We, therefore, find that portion of § 4 of Ordinance No. 1835, prohibiting the proceeds of the additional sales tax from being paid or transferred to the general fund, to be violative of 68 O.S.1971 § 2489. It is hereby stricken.

■ Section 21 of Ordinance No. 1835, however provides for severability of any

---

**5.** See Ordinance No. 1835 § 3 which provides: . . . "This Ordinance shall become and be effective on and after July 1, 1979, subject to approval of a majority of the registered voters of the City of Stillwater voting on the same in the manner prescribed by 11 O.S.1978 Supp., Section 16–101 et seq.; provided that upon approval by the voters as required above, this Ordinance shall remain in effect and not be repealed unless repealed by a majority of the registered voters of the City voting to repeal same in the manner as was required for its approval."

**6.** The taxpayers are particularly troubled by 68 O.S.1971 §§ 2482–2492, especially § 2489, and 11 O.S.Supp.1978 § 17–101.

portion of the ordinance which is held invalid or unoperative by any court of competent jurisdiction. Finding no fault with the remaining sections of the ordinance, we hold valid the ordinance with the additional requirement of compliance with 68 O.S.1971 § 2489.

## IV

The taxpayers contend that the trial court erred in concluding that the ballot title of Ordinance No. 1834 [7] was sufficient. The contention is that while the ordinance provided for the City to lease the municipal utilities to the Trust for a term of fifty years with an option to renew for an additional fifty years, the ballot language of Proposition No. 3 failed to mention the option.[8] The trial court held that although reasonable men might differ on how the proposition should have been articulated, the title was not defective.

■ Cases construing the requirements of the ballot question hold that the question on the ballot submitted to popular vote by the electorate must be in a form to permit the voter to reach an informed decision whether to approve or disapprove the measure. The question must be specific, but it need not include the proposition from beginning to end.[9] It is sufficient if enough is printed to identify the subject matter and to reflect the character and purpose of the proposition. Generally, the requirement concerning submission of ballot propositions is that the question not be deceptive or misleading, and that it be free from uncertainty and ambiguity. The test is whether the voters are afforded an opportunity fairly to express their will,[10] and whether the question is sufficiently definite to apprise the voters with substantial accuracy as to what they are asked to approve.

■ The complete ballot was published in the local paper. Proposition No. 3 does refer to the lease term as being more fully set out in Ordinance No. 1834, and the newspaper informed the voters where a copy of the lease could be obtained and examined. Appellants contend on appeal that the ballot title was misleading and failed to specify the term of the lease. Yet there is no allegation in the petition by the citizens that a citizen was defrauded or mislead; nor was any evidence presented at the trial to support such an assertion. In the absence of evidence to the contrary, a presumption arises in favor of the regularity and validity of the election.[11] The burden is on the persons contesting the election to prove failure to comply with constitutional and statutory requirements.[12] The citizens failed to meet the burden.

## V

Taxpayers also argue the invalidity of Proposition 2 which authorizes the City of Stillwater to incur an indebtedness of twelve million dollars by the issuance of general operation bonds. Having found valid Propositions 3 and 4, their argument is admittedly moot.

7. Ordinance No. 1834 § 1 provides:

"Approval of Water, Sewer and Electric Systems Lease. The City is hereby authorized and directed to lease its presently existing and hereafter acquired water, sewer and electric systems to the Stillwater Utilities Authority for a term of fifty (50) years or to such date as all indebtedness of the Stillwater Utilities Authority is paid or provision for payment is made, with renewal right for a like term pursuant to the terms and conditions of a Lease Agreement dated as of April 1, 1979 by and between the City of Stillwater and the Stillwater Utilities Authority, a copy of which is on file with the City Clerk."

8. See note 2, supra.

9. *England v. McCoy,* 269 S.W.2d 813, 815 (Tex. Civ.App.1954); *McNichols v. City & County of Denver,* 120 Colo. 380, 209 P.2d 910 (1949); *Anselmi v. City of Rock Springs,* 53 Wyo. 223, 80 P.2d 419, 423, 116 A.L.R. 1250 (1938).

10. *Rich v. Walker,* 237 Ark. 586, 374 S.W.2d 476 (1964); *Turner v. Board of Education,* 266 S.W.2d 321 (Ky.1954).

11. *Sykes v. Belk,* 278 N.C. 106, 179 S.E.2d 439 (1971).

12. *Lucchese v. Mauermann,* 195 S.W.2d 422 (Tex.Civ.App.1946) *cert. den'd.,* 329 U.S. 812, 67 S.Ct. 633, 91 L.Ed. 693 (1947); *Oklahoma Tax Commission v. Allcott,* 195 Okl. 99, 154 P.2d 973 (1945).

■ This opinion is addressed to the refusal of the district court to enter injunctive relief. Our decision is limited to the validity of the election pertaining to the ballot propositions. It is not intended, and cannot be construed, as approval of the bond issue. This is the duty of the Attorney General, in his position as bond commissioner of the State of Oklahoma, pursuant to 62 O.S.1971 §§ 11–14.

AFFIRMED IN PART, REVERSED IN PART.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.

DOOLIN, J., dissents.

DOOLIN, Justice, dissenting:

The vice of the majority opinion, at least to me, is apparent in several respects.

Examination of the eight page transcript made in the trial court reveals there was no adversary hearing nor was a controversy presented, argued or decided. Jurisdiction of a justiciable issue is vested in the district court by Art. VII § 7(a) of our Constitution, and although not as detailed or fully expressed as the Case and Controversy provisions of the United States Constitution, Art. III § 2, it (justiciable issue) is nonetheless as necessary.[1]

Secondly, 11 O.S.1979 Supp. § 16–113 provides: ". . . if more than one proposition is submitted, they shall be arranged so that each proposition may be voted upon separately." Not only must the provisions be physically arranged in a separate manner, they must stand separately on their own bottoms and should not be cluttered with extraneous material or cross-references. In the present case, inserted between propositions 2 and 3 was a statement to the effect that all issues must pass to accomplish the purpose of the Bond issue. Examination of the sample ballot shows a cross-reference appearing in proposition 3 to proposition 2. I think the extraneous statement between propositions 2 and 3 and the cross-reference violates the separateness required by 11 O.S.1979 Supp. § 16–113.

I entertain grave doubts that the provisions of Art. III § 7 of the Constitution of Oklahoma, guaranteeing free and equal elections have not been violated by the extraneous statement referred to in the preceding paragraph. Coercion cannot be tolerated in an election, electioneering is specifically prohibited, 26 O.S.1979 Supp. § 7–108. The existence of the extraneous material raises a question as to whether or not the voter's free choice has been affected.

Although we have no case law or statutory provision as to what language must be used on a ballot for special elections concerning bond issues,[2] I am persuaded that the language or title should be likened to the ballot title requirements made under initiative and referendum provisions. That language as stated in 34 O.S.1971 § 9(a) requires the gist of the proposition to be stated in language understood by persons not engaged in the practice of law. In other words, the language should be clear, plain and unambiguous. It cannot be seriously doubted that the term of fifty years and the fact that the term was renewable for another fifty year term must be stated in plain language. The fact that the amount of indebtedness (the gist) is not clearly and plainly stated but is open-ended likewise renders the election invalid to me.

1. For examples of cases deemed controversies and thus justiciable see, *In re: Summers*, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945), and the recent case, *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); cf. *Jones v. Freeman*, 146 P.2d 564, 193 Okl. 554 (1944).

2. The following cases from other jurisdictions require clarity of language in propositions voted on by the people: *England v. McCoy*, 269 S.W.2d 813, 815 (Tex.Civ.App.1954); *McNichols v. City & County of Denver*, 120 Colo. 380, 209 P.2d 910 (1949); *Anselmi v. City of Rock Springs*, 53 Wyo. 223, 80 P.2d 419, 423, 116 A.L.R. 1250 (1938); *Rich v. Walker*, 237 Ark. 586, 374 S.W.2d 476 (1946); *Turner v. Board of Education*, 266 S.W.2d 321 (Ky.1954).