Dear Senate Herbert
¶ 0 This office has received your request for an Opinion addressing, in effect, the following question:
 Do the provisions of 68 O.S.Supp. 1995, § 2701(C), which mandate that if the proceeds of any sales tax levied by a municipality are being used by the municipality for the purpose of retiring indebtedness incurred by the municipality or by a public trust of which the municipality is a beneficiary, the sales tax shall not be repealed until such time as the indebtedness is retired, violate Article V, §§ 1 and 2 and Article XVIII, §§ 4(a)-4(e) of the Oklahoma Constitution.
¶ 1 A city is authorized by 68 O.S.Supp. 1995, § 2701[68-2701] to assess taxes for such general and specific purposes of the municipal government as the Legislature may levy and collect for purposes of the State government. The pertinent provisions of the statute read as follows:
 B. A sales tax authorized in subsection A of this section may be levied for limited purposes specified in the ordinance levying the tax. Such ordinance shall be submitted to the voters for approval as provided in Section 2705 of this title . . . The municipal governing body shall create a limited-purpose fund and deposit therein any revenue generated by any tax levied pursuant to this subsection. Money in the fund shall be accumulated from year to year. . . . The fund shall be nonfiscal and shall not be considered in computing any levy when the municipality makes its estimate to the excise board for needed appropriations. . . .
 C. If the proceeds of any sales tax levied by a municipality pursuant to subsection B of this section are being used by the municipality for the purpose of retiring indebtedness incurred by the municipality or by a public trust of which the municipality is a beneficiary for the specific purpose for which the sales tax was imposed, the sales tax shall not be repealed until such time as the indebtedness is retired. However, in no event shall the life of the tax be extended beyond the duration approved by the voters of the municipality. The provisions of this subsection shall apply to all sales tax levies imposed by a municipality and being used by the municipality for the purposes set forth in this subsection prior to or after July 1, 1995.
68 O.S.Supp. 1995, § 2701[68-2701] (emphasis added).
¶ 2 Subsection C was added by the Legislature in 1995 and mandates that sales taxes levied by a municipality which are used to retire indebtedness may not be repealed until retirement of the underlying indebtedness. You have asked this office to evaluate the constitutionality of subsection C.
¶ 3 Cities, along with other political subdivisions, are subject to constitutional limitations as to the amount of, and manner in which, debt may incurred. Cities and towns in Oklahoma are authorized to issue bonds under the provisions of Sections 26
and 27 of Article X of the Oklahoma Constitution.
¶ 4 It is not uncommon for a city to vote a sales tax for the purpose of assisting in the retirement of bonds used to finance public projects. Prior to the addition to 68 O.S.Supp. 1995, §2701[68-2701], the pledge of sales tax had to be done on a year-to-year basis. In Arthur v. City of Stillwater, 611 P.2d 637 (Okla. 1980), the Oklahoma Supreme Court upheld the pledge of sales tax on a year-to-year basis. In Arthur the voters approved, among other items, a sales tax; the proceeds of which were to be placed in a trust account to be used by the trustees of the Stillwater Utilities Authority. The authority had as its beneficiary the City of Stillwater. Protesting taxpayers argued that passage of the sales tax legally obligated the city to pay revenues beyond the current year's revenue and constituted a proscribed indebtedness. The Court found no financial obligation imposed on the city other than to pay the sales tax revenues to the trust authority for the fiscal year in which the tax was collected. The Court further found there was no pledge or contingent encumbrance on the funds beyond the fiscal year and pursuant to cityordinance the sales tax could be repealed at any time by amajority of the voters. The fiscal year limitation and repeal provision kept the pledge of sales tax from becoming a "debt" of the city.
¶ 5 While the Arthur court found that there was no creation of debt and upheld the use of sales tax receipts on an annual basis, it was not asked to review a situation wherein the sales tax was irrepealable for the life of the bond issue. Irrepealability of statutes and ordinances requires an analysis outside the debt provisions found in Article X of the Oklahoma Constitution. The initiative and referendum provisions of Articles V and XVIII, as well as other fundamental concepts of constitutional law, must be reviewed.
¶ 6 In Granger v. City of Tulsa, 51 P.2d 567 (Okla. 1935), the Supreme Court was asked to determine whether or not the legislative body of the city could, under the Constitution of the State and the charter of the City of Tulsa, repeal, alter or change an ordinance adopted by the voters of the city as an initiative measure. The Court found no express provision in the Oklahoma Constitution prohibiting a municipal legislative body from repealing or amending the measures initiated by the people of the municipality.
¶ 7 The Court, after discussing the rights of the people of a municipality and the people of the State relative to initiative and referendum, concluded that repeal by the people of Tulsa is analogous to repeal of a legislative measure by the people of the State. The Court held that:
 [L]aws proposed and enacted by the people of Tulsa under the initiative provisions of the Constitution and the charter of the city of Tulsa are subject to the same constitutional limitations as are other statutes, and may be amended or repealed by the legislative body of the city at will.
Granger, 51 P.2d at 569.
¶ 8 The Granger decision is consistent with the holding inState v. Coyle, 122 P. 243 (Okla.Crim.App. 1912). The Coyle
decision recognizes the fundamental constitutional principle that a legislative body may not irrevocably bind its successors. In that case, the Oklahoma Court of Criminal Appeals made the following observation:
 There is nothing in our Constitution which prohibits the Legislature from repealing or modifying the acts of its predecessors or its own. It is fundamental that the Legislature cannot pass an irrepealable law.
 Says Judge Cooley: "The Constitution, in conferring the legislative authority, has prescribed to its exercise any limitations which the people saw fit to impose, and no other power than the people can superadd other limitations. To say that the Legislature may pass irrepealable laws is to say that it may alter the very Constitution from which it derives its authority, since, in so far as one Legislature could bind a subsequent one by its enactments, it could in the same degree reduce the legislative power of its successors; and the process might be repeated until, one by one, the subjects of legislation would be excluded altogether from their control. . . ."
Coyle, 122 P. at 253 (emphasis added).
¶ 9 The powers to enact and repeal legislation by initiative and referendum are reserved to the people by Article V, §§ 1 and2 of the Oklahoma Constitution. These powers are specifically extended to the people of every municipality by the terms of Article XVIII, §§ 4(a)-4(e).
¶ 10 The rights of the people to legislate by initiative and referendum regarding fiscal affairs was discussed in Boswell v.State, 74 P.2d 940 (Okla. 1937). The Oklahoma Supreme Court reviewed the proposed issuance of highway revenue anticipation notes to be paid by a portion of the motor vehicle registration and license tax which was diverted into a special fund and "irrevocably" pledged to the payment of the notes. The act was not submitted to the voters for approval. The Court made the following statement regarding the authority of the Legislature in regard to fiscal affairs:
 It is conceded that the control of the fiscal affairs of the state is a legislative function and that the power of the Legislature in the exercise of such control is plenary, subject only to constitutional restrictions, and the power of the people to legislate by means of the initiative and referendum.
This court is not concerned with the wisdom or expediency of the act. It is our sole function to determine whether or not the act contravenes the provisions of the Constitution.
Boswell, 74 P.2d at 942 (emphasis added).
¶ 11 The Court, after defining debt and observing that "no one can doubt that the act in question authorizes the creation of a state debt," held that the effect of the act was to irrevocably pledge funds arising from taxes to the payment of notes and to place a mortgage upon a source of revenue. Boswell,74 P.2d at 943. The Court found the power to create indebtedness is controlled by the limitations of the Constitution and found the same to be unsupported unless the debt is authorized by a vote of the people and a direct annual tax is provided to pay the principal debt and interest thereon. The Court made the following observation about the power of the citizens regarding legislative acts:
 Section 1, Article 5, of the Constitution vests the legislative authority of this state in the Legislature, but by virtue of the same section the people reserved to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also power at their own option to approve or reject at the polls any act of the Legislature. To sustain the validity of the act involved herein would be to hold that the Legislature is empowered to enact irrevocable and unrepealable legislation, thereby not only depriving a future legislative body of its right to repeal the law levying the tax pledged to the payment of the outstanding notes, but likewise denying the people of this state the right to repeal the levy of the tax or to provide for the distribution of the revenues arising therefrom to another or difference purpose.
As we conceive it, the constitutional provisions dealing with the" debt limit" of the state were adopted for the purpose of fixing the power and responsibility of legislation relating to the fiscal affairs of the state upon the existing legislative assembly, and to prevent one legislative assembly from laying its mandate upon a future one. The effect of these provisions is that one legislative assembly cannot guaranty the span of life of its legislation relating to the fiscal affairs of the state. . . . These provisions of the Constitution guarantee that the power of a subsequent legislative body either to acquiesce or repeal shall always be existent.
Boswell, 74 P.2d at 947 (emphasis added).
¶ 12 Any authority to make irrevocable any sales tax levied for a specific purpose by a municipality must be supported by some specific provision of the Oklahoma Constitution. Article X, §§ 26 and 27 prescribe the manner in which the municipalities of this State may voluntarily incur debts that cannot be paid during the fiscal year by allowing cities, among other political subdivisions, to levy an "annual" tax to retire interest and principle upon indebtedness. The term annual tax is synonymous with an ad valorem or property tax. Pitts v. Allen, 281 P. 126,131 (Okla. 1928).
¶ 13 Sections 26 and 27 of Article X are the exclusive methods by which political subdivisions, including municipalities, may become indebted beyond the fiscal year. Neither provision grants authority to a political subdivision to levy an irrevocable sales tax. Where the Legislature has mandated that a sales tax imposed for a specific purpose may not be repealed, it has violated the fundamental prohibition against irrepealable statutes and has infringed upon the rights granted to the citizens of a municipality pursuant to Article XVIII, §§ 4(a)-4(e) of the Oklahoma Constitution.
¶ 14 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. In mandating that a municipal sales tax levied to retire indebtedness may not be repealed, the Legislature has violated the provisions of Article XVIII, §§ 4(a)-4(e) of the Oklahoma Constitution by denying to the citizens of a municipality, the right to repeal an ordinance. Further, the Legislature has impermissibly denied to the governing body of the municipality its right to repeal legislation.
 2. The Legislature cannot bind future legislators by the passage of irrepealable laws, likewise, it lacks constitutional authority to authorize municipalities to pass irrepealable law.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL