## STANOLIND PIPE LINE CO. et al. v. TULSA COUNTY EXCISE BOARD.

No. 28356.   April 5, 1938.

Rehearing Denied June 7, 1938.

Application for Leave to File Second Petition for Rehearing Denied June 21, 1938.

Mastin Geschwind, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., J. Harry Johnson, Asst. Atty. Gen., Dixie Gilmer. County Atty., Ed O. Cassidy, and Claude Rosenstein, for defendant in error.

WELCH, J.   This is an appeal from the judgment of the Court of Tax Review involving protests to certain tax levies which will hereinafter appear.

The first item involves a protest of the general fund levy of school district No. 34 of Tulsa county, and particularly concerns an appropriation for the purpose of paying transfer fees and the levy made for the purpose of financing the same.

It is asserted that the school district board did not make a request of the excise board for an appropriation for such purpose; that it did not include in its estimate of needs any item for transfer fees. The estimate of needs as prepared by the governing board and filed with the excise board included items for office supplies, annual audit. enumeration, salaries of teachers, and other items. each of which was followed by a specific amount therefor.   After such items there appears the following:

"Further for the purpose of providing adequate educational facilities to those pupils qualifying for instruction in grades not taught in this district, or who are handicapped by geographical or topographical conditions, a pro rata part of local revenues in ratio of transferred to non-

transferred pupils as provided by chapter 13, Session Laws 1933, are hereby REQUESTED to be appropriated for the following transferred pupils and to be set aside according to law"

—which was immediately followed by information concerning the number of pupils theretofore transferred to other districts, the number being 27. There were 82 enumerated pupils within the district.

It is urged that because the governing board did not specify by exact figures the amount necessary to pay transfer fees, the same did not constitute an estimate of needs for transfer purposes, nor amount to a request for an appropriation for payment of transfer fees. It is suggested that neither the school board nor any other person was possessed of information, at the time of the preparation of the estimate of needs, from which the exact amount could have been calculated, in order to comply with certain provisions of chapter 13, S. L. 1933.

It is generally true that an estimate of needs should specify the exact amount thereof, but it is equally true that the inclusion of the item in the present estimate in the manner above shown clearly amounts to an estimate of needs in compliance with, and in the amount specified by, chapter 13, S. L. 1933, that is to say, a definite pro rata part of the total needs or appropriations. It is not wholly meaningless in its manner of inclusion within the estimate. Under the facts here, it amounted to an estimate for transfer purposes of an amount equal to a 27/82 part of the total appropriation for all general fund purposes. We think the fact alone that the total amount of the final appropriations could not be calculated until a later time does not render the estimate for the item so indefinite that it may be properly said the school board did not present an estimate of needs for payment of transfer fees.

A considerable part of protestants' brief is devoted to argument based entirely or partially upon the assumption of fact that the school board did not include within its estimate of needs an item for payment of transfer fees. Our conclusion that such an item was properly included therein would render our consideration and conclusions as to other questions without controlling influence in a case where the school board had not included within its estimate of needs an item for payment of transfer fees, and we therefore do not pass upon some of the questions urged.

It is urged by the protestants that "expenditure of local revenues and tax levies by school districts to pay transfer fees for resident pupils attending schools in other districts is unauthorized and illegal." In argument under the quoted proposition, the protestants appear to recognize that the school board and the excise board sought to comply with chapter 13, S. L. 1933, with reference to transfer fees. It is urged, however, that sections 1, 2, 3, 7, 8, and 9 of said chapter 13. are special and local legislation, and violate section 46. article 5, of the Constitution. It is urged that section 1, chapter 13. S. L. 1933, is void for uncertainty and is violative of "the financial and school policies of this state, as expressed in its Constitution," and "in that it fails to provide a manner or method of executing its terms as applicable to those enumerated resident children who are not using and are not eligible to use public school facilities."

It is urged that the 1933 act, wherein it provides that school district funds shall be applicable each year for the pro rata benefit of the enumerated children of the district, is violative of section 14, article 10, of the Constitution, wherein it is provided that "taxes shall be levied and collected by general laws, and for public purposes only. * * *"

We have carefully considered the argument of the protestants and are unable to find merit in the suggestion that the legislation attacked is special and local. Anderson v. Ritterbusch, 22 Okla. 761, 98 P. 1002, and Bishop v. City of Tulsa, 21 Okla. Cr. 457, 209 P. 228. It affects all school districts within the class throughout the state alike. and it applies equally to every child within the class within the state, and the same is a general law. Grable v. Childers, State Auditor, 176 Okla. 360, 56 P.2d 357.

Section 1 of the 1933 act does not appear to be uncertain. Section 1, article 13, of the Constitution imposes the duty upon the Legislature to establish and maintain a system of free public schools wherein all the children of the state may be educated, and section 1, as well as other sections of the 1923 legislative act, is clearly designed to promote equality of facilities. Contrary to protestants' contention, the act does not require that a pro rata part of the school funds be spent on those children not attending school for some reason, but it does declare the policy of equal provision of facilities to be placed at the disposal of each child in the district, and when the funds of the district are expended in fur-

nishing equal educational facilities for the children of the district, it is a use of same for public purposes. In that respect it follows closely the letter and spirit of the Constitution.

It is said that chapter 13, S. L. 1933, does not provide for or permit estimates of needs for payment of transfer fees to be made by school boards. and that the act in fact repealed the only existing laws which authorized such estimate.

We think an examination of the act clearly shows that it is the policy declared thereby that the school districts affected must provide equal school facilities for the children of the district, and that if not provided within the district, it must be provided by transfer, and that the transfer fees were payable by the transferring district out of the current school funds. We think the terms of the act contain authority to the school districts to expend funds for transfer fees, and such expenditure being authorized by law, the item was properly included in the estimate of needs of the district.

It is next contended that "transfer fees not exceeding $45 for grade pupils and $75 for high school pupils are payable in full by the state."

In support of that contention, it is urged that subsection 2 and the last paragraph of subsection 3 of section 4 of House Bill 6, S L. 1937, pp. 533, 535, require the payment in full of transfer fees not exceeding the above-named amounts. The argument is based upon the assumption that there are no existing laws authorizing school districts to pay transfer fees out of local revenues. We have already concluded that transfer fees may properly be paid from local revenue, and we therefore find no merit in the proposition urged.

The next item of protest involves the general fund levy of school district No. 33 of Tulsa county. There was included within the calculations of the excise board as estimated income from sources other than ad valorem taxes the sum of $864.95. and it is contended that the sum of $1,397.48 should have been used. It appears that under the facts here the use of the last above-named amount was permissible under the law. and the exact question presented is whether article 7, chapter 34, S. L. 1937, requires the use thereof in such calculations.

Article 7, chapter 34, S. L. 1937, provides:

"The governing board of any school district in the state is hereby authorized to include in the district's financial statement and estimate, required by law to be filed with the county excise board, a sum anticipated receipts from transfer fees for school children transferred to the district, based upon transfers actually authorized at and prior to July 1st of the current calendar year, which sum shall be computed by multiplying the number of children legally transferred to the district for the current fiscal year by a fraction whose enumerator shall be the amount of money collected by the district as transfer fees during the preceding fiscal year and whose denominator shall be the number of children transferred to the district during the preceding fiscal year.

"It shall be the duty of the county excise board to include said sum. thus computed, as expected income in determining the district's revenues available for appropriation for the current year.

"This act, however, shall be subject to the provisions of any present or future act appropriating state funds for the aid of public schools."

The school district during the previous fiscal year had received transfer fees direct from other districts in the sum of $503.39, and from the state the sum of $308. Those sums were for 18 transferred pupils received by the district. Prior to July 1, 1937, there had been 31 pupils duly transferred to the district. It will be observed that during the previous year the district had received $45 08 per transferred pupil.

The Court of Tax Review held that article 7 chapter 34, S. L. 1937, was directory only.

Prior to the enactment of the legislation under discussion. the limit of the estimated receipts in this case would have been $811.39, and the taxing authorities were not required by the law to estimate the full amount of such limit. Section 12678. O. S. 1931; Protest of St. L-S. F. Ry. Co., 166 Okla. 50, 26 P.2d 212.

It is apparent that the act under discussion changed the prior existing law so that the taxing authorities are not now limited to the amount actually collected from transfer fees during the previous year, and now they appear to be authorized to use the rate per pupil which was collected during the prior year, multiplied by the number of pupils transferred for the current year, but it does not necessarily follow that the Legislature intended thereby to require the amount arrived at in that

manner to be included in the calculation of estimated income from such source.

It is true that the new legislation prescribes the formula for such calculations, but this formula is preceded in the act by the expression, "the governing board of any school district in the state is hereby authorized to include in the district's financial statement and estimate. * * *" Had the Legislature intended to require the sum, calculated in the prescribed manner, to be so used, we are of the opinion that a term other than "authorized" would have readily occurred to the lawmaking body.

Our conclusion that article 7, chapter 34, S. L. 1937, merely authorizes the use of the sum calculated as prescribed therein, rather than requires such use, is supported not alone by the language employed therein, but by the provisions of the Constitution relating to the fiscal policy of municipal subdivisions of the state, as discussed in Sinclair Prairie Pipe Line Co. v. Excise Board of Seminole County, 171 Okla. 382, 42 P.2d 501.

The primary consideration in all cases is to avoid an estimate of receipts in excess of those that will actually be received, and that important consideration may not be circumvented by the taxing officials nor the Legislature. To do so would result in expenditures and obligations in excess of the income and revenue provided for the current year, contrary to section 26, article 10, of the Constitution. Considering the inherent danger of a violation of such constitutional provision which attends nearly all efforts to require the inclusion of an arbitrary sum in an estimate of income, the courts will not hold a legislative act to be mandatory in that respect, unless the act so provides in clear, precise, and unmistakable language.

This court presumes in the present case that the taxing officials in estimating such receipts acted with due regard to the amount of same which might be reasonably expected to be collected promptly, and in so doing their action was in full compliance with law.

The next item of protest involves the levy to finance an appropriation for the operation of school cafeterias by district No. 22 in Tulsa county.

It is asserted that article 2, chapter 34, S. L. 1937, is unconstitutional. The act provides as follows:

"Section 6867, chapter 34, article 9, Oklahoma Statutes 1931, is hereby amended to read as follows:

"The board of education shall have power to elect their own officers, except as otherwise provided by law; to make rules and regulations governing the board and the schools and school system of their respective districts; to maintain and operate a complete public school system of such character as the board of education shall deem best suited to the needs of the school districts; to provide, when deemed advisable, cafeterias, or other eating accommodations; thrift banks or other facilities for the teaching and practice of thrift and economy; book stores; print shops; to incur all expenses, within the limitation provided by law, necessary to carry out and fulfill all powers herein granted; to contract with and fix the compensation of all officers, servants and employees and exercise sole control over all of the schools and all school property of the district."

The title of the act appears as follows:

"An act amending section 6867, chapter 34, article 9, Oklahoma Statutes, 1931; defining powers of boards of education; and declaring an emergency."

Protestants assert that the act violates section 57, article 5, of the Constitution in that the title does not indicate the nature of the act, citing Traders Compress Co. v. Precure, 107 Okla. 191, 231 P. 516; Johnson v. Grady County, 50 Okla. 188, 150 P. 497, and other cases. Protestants say:

"Said bill, conferring powers upon independent school districts, which, of course, may only be exercised through action of their governing boards, and conferring other powers on said governing boards, or even defining the powers of such boards, is void as violative of section 57, article 5, in that it relates to more than one subject, viz., the subject of conferring upon or defining powers of governing boards, and the totally different subject of conferring, upon independent school districts, authority to provide facilities and incur expenses for certain specified purposes."

They further contend that the legislation seeks to amend an existing law by reference only to its title, contrary to the provisions of the said section of the Constitution, and further that:

"* * * The powers sought to be conferred on independent school districts by House Bill 319 related to a subject which has been covered by another section forming a part of the Code which included the section sought to be amended when the same was enacted."

They refer to section 6861 O. S. 1931, in connection with that contention.

We have given careful consideration to the several contentions of protestant in this

connection, and fail to observe wherein the act in question offends section 57, article 5, of the Constitution. The act relates entirely to powers and authority which may be exercised by school districts, and is germane to the title. We do not observe a dual purpose intended by the act, nor does it conflict with the provisions of section 6861, O. S. 1931. City of Pond Creek v. Haskell, Governor, 21 Okla. 711, 97 P. 338; In re County Com'rs of Counties Comprising Seventh Judicial District, 22 Okla 435, 98 P. 557; Perry v. Carter, State Auditor, 173 Okla. 267, 48 P.2d 278; Griffin v. Thomas, 86 Okla. 70, 206 P. 604.

The judgment of the Court of Tax Review is in all things affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, PHELPS, CORN, HURST, and DAVISON, JJ., concur. GIBSON, J., specially concurring.

GIBSON, J. (concurring specially). I concur in the result reached, but I do not agree that the original estimate submitted by the school board of district No. 34 complied with the statute as an estimated need for transfer fees. I do not find any authority for holding that a certain ratio of an undetermined total appropriation meets the requirements of our constitutional and statutory provisions relating to the necessity of fixing definitely the amounts of **needs** for which taxes may be levied. The excise board, however, placed a definite amount in the estimate and published the corrected amount as provided by article . 13, chapter 66, S. L. 1935. This was done pursuant to a resolution, wherein it was found by the excise board that, if an item of expected primary aid was not considered by it as an item of income, then the levy, together with the aid the state would pay, would produce income far in excess of the needs, and if the item of expected primary aid was considered, the levy would be such that certain aid would not be received, hence the needs could not properly be financed. The excise board found it necessary, therefore, to adjust the appropriations and also ordered that "the levy be recomputed to adequately finance **the needs** of said school district." The recomputed appropriations and "corrected levy" were included in the publication, which substantially complied with the law. It does not appear that the item as recomputed was, as a matter of fact, in excess of the actual needs for the purpose, nor that such item was not among those authorized by the voters. Neither does it appear that the final levy was in excess of

that authorized by the voters of the district. In the absence of. more positive proof, the conclusion is that the excise board, finding a request for transfer fees in the school board's estimate, found that the budget requested required adjustments in order to meet the needs and acted accordingly, and within the statute.