BATTLES et al. v. STATE ex rel. OKLAHOMA COMMISSION FOR CRIPPLED CHILDREN.

No. 34996. Nov. 20, 1951.

Rehearing Denied May 13, 1952.

*244 P. 2d 320.*

Ed Edmondson, Jr., Co. Atty., Muskogee, for Muskogee County Excise Board and Board of County Commissioners, intervener.

Ben Franklin, Oklahoma City, and Chal Wheeler, Muskogee, for Muskogee County Excise Board and Paul Cooke, intervener.

Andy Wilcoxen, Muskogee, for City of Muskogee, intervener.

Mac Q. Williamson, Atty. Gen., James C. Harkin, Asst. Atty. Gen., and Julian B. Fite, Muskogee, for defendant in error.

DAVISON, J. This is an appeal from a judgment of the district court of Muskogee county, Oklahoma, ordering, upon application of the State of Oklahoma ex rel. Oklahoma Commission for Crippled Children, as plaintiff, the issuance of a writ of mandamus requiring the defendant, the excise board of said county, to comply with the provisions of the Crippled Children's Act relative to the appropriation of revenue from ad valorem taxes as therein required (10 O. S. Supp. 1949 §172.13). The other parties to the action are interveners.

Section 172.13 of Title 10, O.S. Supp. 1949, provides:

"It shall be the mandatory duty of the board of county commissioners of each county of the State of Oklahoma to include in their respective estimates, and of the excise board of each county

of the State of Oklahoma to appropriate for each fiscal year hereafter a sum equal to not less than the net proceeds of one-fifth (1/5) of one mill on the assessed valuation of their respective counties. Said appropriation is to be included within the regular county general fund appropriation for current expenses and set aside to care for the children accepted by the Commission upon application by the respective county court as provided in Section 12 of this Act (10 O.S. 1949 Supp. §172.12). This appropriation shall be known as the Crippled Children's Budget Account, and it shall be unlawful to use said Budget Account for any purpose other than those authorized in this Act (10 O.S. 1949 Supp. §§172.1 through 172.16). No county shall be liable for any charge beyond the respective Crippled Children's Budget Account of the fiscal year and no more than twenty (20%) per cent of the total Crippled Children's Budget Account of any one county may be expended for any one patient during any fiscal year. Claims filed by the Commission for payment by the county shall be sent to the respective county clerk and shall be allowed by the respective board of county commissioners if the same are found to be in keeping with the provisions of this Act."

For the fiscal year 1950-51, the board of county commissioners of Muskogee county, in the estimate of needs and request for appropriations, included an item of $6,600 which met the requirements of the above-quoted statute. The total amount of all appropriations requested by said board for said year for all county purposes exceeded by approximately $119,000 the income and revenue apportioned to the county for that year. The excise board of said county, after tentatively fixing the apportionment of income and revenue and in order to make the appropriations for all county purposes come within the amount of income available for the payment thereof, made appropriations in amounts for less than those requested and estimated by the board of county commissioners to be necessary. In effecting such reductions, one of the items entirely omitted from the appropriations was the above mentioned $6,-600 requested for the Crippled Children's Budget Account.

. The defendant then made an apportionment of the tax levy among the various municipal subdivisions and filed the same together with the revised budgets and proposed appropriations with the State Auditor. Plaintiff brought this action during the protest period while the apportionment and budgets were on file with the State Auditor. Alternative writ was issued to the defendant who made a return thereof and filed answer thereto. After permission of the court was granted, petitions in intervention were filed by the board of county commissioners, the city of Muskogee, and Paul Cooke, a resident taxpayer. The principal defense set up by the defendant and the interveners was the assertion of the unconstitutionality of the above-quoted statute. Trial was had resulting in the granting of a peremptory writ requiring the excise board to set up an appropriation in conformity with that requested by the county commissioners and as required by said legislative act. This appeal was taken from that judgment and the funds were ordered impounded not to be spent until the matter was finally determined by this court.

Defendants contend that the above-quoted statute is in conflict with the Oklahoma Constitution while plaintiff urges that the question of the constitutionality of the statute is not here properly presented for determination. It is, however, decisive of the issues involved, and in such situations it is the policy of this court, "if a public question is involved and confusion may occur in the making of levies for" subsequent fiscal years "to express our view upon the question." Atchison, T. & S. F. Ry. Co. v. Excise Board of Washington County, 168 Okla. 619, 35 P. 2d 274.

Whether or not the Legislature could, by the act under consideration (Crippled Children's Act), apportion therefor a part of the limit of levy provided

by art. X, §9 of the Constitution, would first depend upon its authority to apportion funds of the various counties to the specific purposes covered by the act. Article XXI of the Oklahoma Constitution provides:

"Educational, reformatory, and penal institutions and those for the benefit of the insane, blind, deaf, and mute, and such other institutions as the public good may require, shall be established and supported by the State in such manner as may be prescribed by law."

In construing that article of the Constitution, this court has held that counties cannot be required to contribute to the treatment and support of patients in a state tubercular hospital. Protest of St. Louis & S. F. Ry. Co., 143 Okla. 145, 288 P. 307; St. Louis & S. F. Ry. Co. v. Morris, Co. Treas., 143 Okla. 160, 288 P. 306; Bank of Picher v. Morris, Co. Treas., 157 Okla. 122, 11 P. 2d 178; Protest of C., R. I. & P. Ry. Co., 164 Okla. 118, 23 P. 2d 157; Protest of Oklahoma Pipe Line Co., 168 Okla. 231, 32 P. 2d 719. Reaching the same conclusion as to inmates in a state hospital for the insane was the case of Board of County Commissioners of Logan County v. State ex rel. Short, 122 Okla. 268, 254 P. 710.

The forerunner of the act here under discussion was section 1751 of O.S. 1931. In the case of C., R. I. & P. Ry. Co. v. Excise Board of Stephens County, 168 Okla. 519, 34 P. 2d 274, the constitutionality of that earlier act was assailed. Following the same line of reasoning as in the cases cited in the last paragraph above, this court held:

"Under article 21 of the Constitution the University Hospital, a state institution maintained by the state must be maintained at the expense of the state. In so far as chapter 14, art. 5, §§1748-1755, O. S. 1931 (commonly known as the Crippled Children's Act), attempts to impose a portion of the burden of maintenance on the county, it is unconstitutional and inoperative."

There are two principal differences between the former act and the present one: First. The earlier act which became effective prior to the amendment of art. 10, §9, Oklahoma Constitution, authorized the levy of a one-tenth mill on the dollar *in addition* to the levy necessary for county general fund appropriations; the present act must be financed, if at all, *within* the limit of levy provided by said art. 10, §9, and thus reduce the amount available for county general fund purposes; Second. Under the provisions of the earlier act, the hospitals furnishing treatment to the crippled children were required to file claims individually for allowance and payment by the various counties of residence of said patients, thus making it possible to identify those filed by University Hospital, a state institution; under the provisions of the present act all claims are paid by the Crippled Children's Commission and it in turn must file claim for reimbursement. In such circumstances, the amount of such appropriation actually paid to the state institution would not necessarily be subject to identification. A study of the two acts in the light of the opinion in the Stephens County case, above cited, would indicate that the present act was so framed that it would accomplish, indirectly, those results which this court held in the Stephens County case could not be done directly. By the provisions of sec. 13 (10 O. S. 1949 Supp. §172.13) the funds which the local boards are directed to appropriate are required to be placed in a Crippled Children's Budget Account from which no withdrawals can be made except in payment of claims by the Commission. The administration of the fund, except for the ministerial acts of allowing the Commission's claims and issuing warrants in payment thereof, is entirely in the hands of the Commission. The provisions of sections 14 and 15 of the Crippled Children's Act (10 O.S. 1949 Supp. §§172.14 and 172.15) indicate that practically all of the funds provided for by section 13 (10 O. S. 1949 Supp. §172.13) are required to be used to reimburse the Commission for payments made by it to the University

Hospital or Oklahoma Hospital for Crippled Children, a state institution, in violation of the State Constitution (art. 21).

Although, as was said in the case of Chicago, R. I. & P. Ry. Co. v. Excise Board of Stephens County, supra,

"If the unconstitutional portions of a statute are severable from the remainder of the act in such a way that it may be presumed that the valid portions would have been enacted with the invalid portions eliminated, the failure of the latter will not render the entire statute void,"

nevertheless, if, as in section 172.13 of 10 O. S. 1949 Supp.,

"the provisions are so interwoven as to be incapable of distinct separation, or of such character that it cannot be said the Legislature intended the valid parts should be enforced if the other parts fail, then the entire section must be held to be invalid." Parwal Inv. Co. v. State, 71 Okla. 121, 175 P. 514.

Therefore, it must be concluded that the primary purpose of enacting section 172.13 of 10 O.S. 1941 Supp. was to require the various counties in the state to provide a fund which the Oklahoma Commission for Crippled Children could use for reimbursement of expenditures or "expense of the patient's care and treatment in the University Hospital until the county fund becomes exhausted." Quoting further from the Stephens county case, supra, the addition of one word makes what was said there applicable here:

"In so far as the act by implication may be said to (indirectly) authorize the payment of any part of the crippled children's fund to the University Hospital, a state institution, for the care of crippled children. the same violates the provisions of art. 21, supra, and is unconstitutional and void."

And since "the obnoxious portion of the section is of such import that the other portions without it would cause results not contemplated or intended by the Legislature, then the entire section must be held inoperative." Parwal Inv. Co. v. State, supra.

Having reached this conclusion, it is unnecessary to determine whether or not the statute is also in contravention of art. 10, §9, of the Constitution, in that it provides for the use of part of the proceeds of an ad valorem tax for state purposes. The argument in the briefs on this proposition appears to have merit also. The briefs of the parties contain arguments as to the applicability of art. 17, §3, requiring the counties to provide "for those inhabitants who, by reason of age, infirmity or misfortune, may have claims upon the sympathy and aid of the county." But the record would indicate that proper provision for that purpose was made by other appropriations which are not shown to be so inadequate as to be a noncompliance with such constitutional requirement.

For these reasons, the writ in mandamus should be recalled and judgment entered for defendants.

The judgment is reversed and the cause remanded, with directions to enter judgment for defendants.