2002 OK 47

Jack L. GRIMES, Robert Godwin, Representative Bill Graves, Ed W. Jantzen and Jack Thompson, Petitioners,

v.

The CITY OF OKLAHOMA CITY, a municipal corporation, The Oklahoma City Metropolitan Area Public Schools Trust, Carl E. Edwards, Chairman and Trustee, and Trustees of J.W. Mashburn, Stanley F. Hupfield, Patrick T. Rooney, Linda P. Lambert, Rudy J. Alvarado and Valerie Thompson, The City of Lawton, a municipal corporation, and The City of Ardmore, a municipal corporation, Respondents.

No. 96,836.

Supreme Court of Oklahoma.

June 4, 2002.

As Corrected July 8, 2002.

---

**37.** Title 42 O.S.2001 § 152, see note 2, supra; 42 O.S.2001 § 153, see note 3, supra.

William D. Graves, Oklahoma City, OK, Pro Se and for Petitioners Jack L. Grimes, Robert Godwin, Ed W. Jantzen, Jack Thompson.[1]

Thomas J. Roach, Oklahoma City, OK, for Petitioners Ed W. Jantzen, Jack L. Grimes, Robert Godwin.

John H. Vincent, Frank V. Jensen, Randy W. Henning, City Attorney and Office of City Attorney, City of Lawton, OK, for Respondent City of Lawton, Oklahoma.

Diane Lewis, Kenneth D. Jordan, Marylu T. Gordon, Municipal Counselor and Office of Municipal Counselor, City of Oklahoma City, OK, for Respondents The Oklahoma City Metropolitan Area Public Schools Trust, Carl E. Edwards, Chairman and Trustee, and Trustees J.W. Mashburn, Stanley F. Hupfield, Patrick T. Rooney, Linda P. Lambert, Rudy J. Alvarado, Valerie Thompson.

Clyde A. Muchmore, Mark S. Grossman, Mary H. Tolbert, Crowe & Dunlevy, Oklahoma City, OK, for Respondent City of Oklahoma City.

William P. Bleakley, Linda Maria Meoli, Stephanie J. Mather, The Center for Education Law, Inc., Oklahoma City, OK, for Amicus Curiae Independent School District No. 89 of Oklahoma County, Oklahoma.

Richard B. Wilkinson, John Morris Williams, Oklahoma Education Association,

1. Attorneys listed herein are those who have entered appearances in the instant cause. Attorneys whose names appear on briefs but who have failed to enter an appearance as required by Okla.Sup.Ct.R. 1.5(a) are not listed herein.

Oklahoma City, OK, for Amicus Curiae Oklahoma Education Association.

Charles E. Wade, Jr., Wade and Mackey, Lawton, OK, for Amicus Curiae Independent School District No. 8 of Comanche County, Oklahoma.

Diane Pedicord, for Amicus Curiae Oklhoma Municipal League, Inc.

Douglas F. Price, Office of Attorney General for State of Oklahoma, Oklahoma City, OK, for Intervenor Office of the Attorney General of the State of Oklahoma.

WINCHESTER, J.

■ ¶ 1 The instant matter concerns the constitutionality of a statute enacted by the legislature in November, 1999 pursuant to 1999 Okla.Sess. Laws, ch. 217, § 5, codified as 11 O.S.2001, § 22–159. Also at issue are the provisions of two municipal ordinances, Oklahoma City ordinance no. 21,805 and Lawton ordinance no. 99–29, adopted in reliance on the statute. The parties agree we should assume original jurisdiction because this cause involves *publici juris* issues. Indeed, this Court has assumed original jurisdiction in controversies involving the constitutionality of statutes and public finances. *See, e.g., Phillips v. Oklahoma Tax Commission*, 1978 OK 34, 577 P.2d 1278 (original jurisdiction assumed when petitioners challenged constitutionality of use tax codified at 68 O.S.Supp.1977, § 1402a); *City of Tulsa v. State of Oklahoma*, 2001 OK 23, 20 P.3d 144 (original jurisdiction assumed when petitioner challenged the applicability of a certain statute to municipal sales and use tax revenues.) The immediacy for assuming original jurisdiction is present because the City of Oklahoma City and the City of Lawton currently collect sales taxes to support public schools in reliance upon the validity of § 22–159. *See, e.g., Phillips v. Oklahoma Tax Commission*, 1978 OK 34, 577 P.2d 1278; *State ex rel. Board of Commissioners of Harmon County v. Oklahoma Tax Commission*, 1942 OK 266, 127 P.2d 1052. Accord-

ingly, we assume original jurisdiction over the instant case.

■ ¶ 2 Petitioners seek declaratory relief to declare 11 O.S.2001, § 22–159 unconstitutional. Only in rare circumstances does this Court assume original jurisdiction to grant a form of declaratory relief. *Keating v. Johnson*, 1996 OK 61, ¶ 12, 918 P.2d 51, 57, *citing Ethics Commission v. Cullison*, 1993 OK 37, ¶ 4, 850 P.2d 1069, 1072. The instant controversy does not constitute a rare circumstance in which this Court needs to fashion a remedy or enlarge the scope of its extraordinary declaratory relief.

¶ 3 Petitioners also seek a writ of prohibition and/or of mandamus, to prohibit municipal officials from acting in accordance with the two municipal ordinances adopted in reliance on the statute or to mandate that they pursue a different course of action. Since we determine that the two ordinances are authorized, the issuance of a writ is unwarranted.

## FACTS AND PROCEDURAL HISTORY

¶ 4 Previously, Respondent City of Ardmore was dismissed pursuant to the application of Petitioner Jack Thompson. On November 6, 2001, we assumed original jurisdiction and denied a temporary injunction against Respondents and a stay of the November 13, 2001, election concerning Oklahoma City Ordinance No. 21,805. Now, we turn to the remaining issues Petitioners raise.

## PUBLIC UTILITY BOND ACT

■ ¶ 5 Petitioners argue that § 22–159 is part of the Public Utility Bond Act[2] and as such, Const. Art. 10, § 27(B) concerning revenue bonds applies and is violated by § 22–159. We disagree. Section 22–159 appears in the Oklahoma Statutes immediately after the Public Utility Bond Act and provides:

" § 22–159. **Municipal support of public school systems**

Municipalities may support any public school system located in whole or in part

---

**2.** The Public Utility Bond Act, enacted in 1992, effective July 1, 1992, and codified at 11 O.S. 2001, §§ 22–150 *et seq.*, references nine sections, to-wit: §§ 22–150, 22–151, 22–152, 22–153, 22–154, 22–155, 22–156, 22–157 and 22–158. Con-

fusion results from a scrivner's error added by West Publishing in the footnote of § 22–150 that incorrectly identifies § 22–159 as part of the 1992 Bond Act.

within the corporate limits of the municipality, including without limitation by the expenditure of municipal revenues for construction or improvement of public school facilities. In furtherance of municipal support for any public school system, as authorized by this section, the municipal governing body may take all actions necessary to effectuate such support."

¶ 6 The intent of the legislature controls when interpreting statutes. *Tulsa County Deputy Sheriff's Fraternal Order of Police v. Board of County Commissioners of Tulsa County,* 2000 OK 2, ¶ 10, 995 P.2d 1124, 1125, *reh'g. denied,* (June 30, 1998), *appeal after remand,* 2000 OK 2, 995 P.2d 1124. Such intent must be gleaned from the statute in view of its general purpose and object. *TXO Production Corp. v. Okl. Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 968. It is presumed that the law-making body has expressed its intent in a statute and that it intended what it so expressed. *TXO Production Corp. v. Okl. Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 969.

¶ 7 In analyzing § 22–159, we determine its general purpose is to allow a municipality the option to support public school systems that are located, in whole or in part, within the corporate limits of the municipality. The statute's title, "Municipal support of public school systems," evidences the legislature's intent that this section apply to municipal support of public schools and not to public utilities or to revenue bonds issued to purchase or construct public utilities. The legislature enacted § 22–159 in 1999, pursuant to Section 5 of House Bill No. 1393, and identified this legislation as creating new law, not as amending the 1992 Bond Act. Accordingly, we hold that § 22–159 is not a part of the Public Utility Bond Act and, of necessity, Const. Art. 10, § 27(B) concerning revenue bonds is inapplicable to § 22–159.

## CONSTITUTIONAL ISSUES

### Sources of Public School Funding

¶ 8 Petitioners contend 11 O.S.2001, § 22–159 is unconstitutional in that it violates

Art. 13, § 1; Art. 5, § 46 and Art. 21, § 1 of the Oklahoma Constitution.

"In determining the constitutionality of the subject Act, this court is guided in its consideration thereof by well established general precedents. In construing the constitutionality of a statute, the Supreme Court is not authorized to consider its propriety, desirability, wisdom, or its practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. The function of the court is clearly limited to the determination of the validity or invalidity of the act. There is a presumption that the Act is constitutional."

*Application of Oklahoma Capitol Improvement Auth.,* 1960 OK 207, ¶¶ 8, 9, 355 P.2d 1028, 1031.

¶ 9 Petitioners argue Const. Art. 13, § 1 limits funding of public school systems to state funds.[3] As such, they reason that 11 O.S.2001, § 22–159 is unconstitutional because it provides for municipal support of public school systems. We disagree. Const. Art. 13, § 1 neither discusses nor limits funding sources for public school districts to state funds. If two constructions are possible, one which would uphold the statute and one which would strike it down, it is our duty to apply the constitutional construction. *City of Oklahoma City v. Oklahoma Tax Commission,* 1990 OK 27, ¶ 10, 789 P.2d 1287, 1292, citing in footnote 11, "*State v. Goforth,* 772 P.2d 911, 914 (Okla.1989); *Earl v. Tulsa County Dist. Court,* 606 P.2d 545, 547–48 (Okla.1979)." Petitioners' construction would preclude the well-established procedure whereby counties levy *ad valorem* taxes to support public school districts pursuant to Const. Art. 10, § 9. Indeed, § 9(b) requires counties to support public school districts. Therefore, Petitioners' argument that Art. 13, § 1 limits funding of public school systems to state funds must fail.

---

3. Article 13, § 1 states:
" § 1. **Establishment and maintenance of public schools**

The Legislature shall establish and maintain a system of free public schools wherein all the children of the State may be educated."

## General vs. Special Law

■ ¶ 10 Petitioners contend 11 O.S. 2001, § 22–159 constitutes a special law and violates Const. Art. 5, § 46 and § 59.[4] Our analysis does not reach the provision contained in § 59 unless we first find that § 22–159 is a special law. In determining whether § 22–159 is a general or special law, we note that it is a general law if it "relates to persons or things as a class rather than relating to particular persons or things." *Grant v. Goodyear Tire & Rubber Co.*, 2000 OK 41, ¶ 5, 5 P.3d 594, 597, citing *Reynolds v. Porter*, 1988 OK 88, ¶ 14, 760 P.2d 816, 822, *Guthrie Daily Leader v. Cameron*, 3 Okla. 677, 41 P. 635, 639 (1895). It is a special law if "a part of the entire class of similarly affected persons is separated for different treatment." *Grant*, 2000 OK 41, ¶ 5, 5 P.3d 594 at 597, citing *Reynolds*, 1988 OK 88, ¶ 14, 760 P.2d 816 at 822. We held in *Anderson v. Walker*, 1958 OK 297, ¶ 16, 333 P.2d 570, 574 that a law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. Section 22–159 concerns municipalities in the state of Oklahoma. It is a general law because no part of the class of municipalities is separated for different treatment, and it relates to all municipalities in the state. Since we determine that § 22–159 is a general law, we need not analyze the statute in the context of Const. Art. 5, § 59 because this provision pertains to special laws. *Reynolds v. Porter*, 1988 OK 88, ¶ 14, 760 P.2d 816, 822–823.

■ ¶ 11 This statute neither mandates nor precludes municipalities from supporting public school systems located within their corporate limits. Neither does it mandate nor does it preclude municipalities from expending municipal revenues for construction or improvement of public school facili-

ties. Indeed, the statute is permissive in character because the definitive word chosen by the legislature is "may" instead of "shall." "May" denotes a permissive statute. "Shall" signifies a mandatory directive or command. See, e.g., *Keating v. Edmondson*, 2001 OK 110, ¶ 13, 37 P.3d 882, 888; *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 11, 33 P.3d 302, 307. The statute affords all municipalities in the state of Oklahoma an option to support public school districts located therein, and this option applies equally to each municipality. Whether or not all municipalities choose to exercise this option is of no consequence in our analysis since the statute is general, applies to a designated class, (to-wit: municipalities in the state of Oklahoma,) and operates equally upon all the members of the class (municipalities in the state of Oklahoma) for which it was adopted. Accordingly, § 22–159 does not violate Const. Art. 5, § 46 or Const. Art. 5, § 59.

■ ¶ 12 We next address the issue of whether Oklahoma City municipal ordinance No. 21,805 and the City of Lawton municipal ordinance No. 99–29 are general or special laws because of the method in which the ordinances utilize sales tax revenues.

> "The decisive question for our determination is whether the act in question was a general law as distinguished from a local or special law. In deciding this question we must look to see if there was a proper and legitimate classification and that such classification was not arbitrary or capricious, bearing a reasonable relationship to the object to be accomplished."

*Sanchez v. Melvin*, 1966 OK 116, ¶ 14, 418 P.2d 639, 641.

¶ 13 Oklahoma City municipal ordinance No. 21,805 apportions sales tax revenues to support public school districts based on the number of students in each school district who live within Oklahoma City and based

---

4. Const. Art. 5, § 46 and § 59 state in pertinent part:

" **§ 46. Local and special laws on certain subjects prohibited**
The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
... Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes;"

" **§ 59. Uniform operation of general laws-Special laws when general law applicable**
Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

upon need. Independent District No. 89 is comprised solely of students who live in Oklahoma City, whereas the other school districts are comprised of students who live in Oklahoma City and in surrounding suburban areas. The Oklahoma City Metropolitan Area Public Schools Trust (OCMAPST) will act as a conduit for revenues and 70% thereof will go to Independent District No. 89 while 30% will go to twenty-three suburban districts. Independent District No. 89 has ill-equipped and dilapidated school buildings, and thus greater need than suburban districts that have newer, better-equipped facilities. The statute establishes a legitimate and reasonable classification of municipalities statewide that share a situation with a rational relationship to a legitimate legislative objective, to-wit: public school districts that agree to an offer of support from the sales tax revenues collected by the municipalities in which they are located, (either in whole or in part.)

¶ 14 Similarly, Lawton municipal ordinance No. 99–29, approved by the citizens of Lawton in a November 9, 1999, election, establishes a sales tax to provide for certain capital improvements on the basis of need, including construction of a new Central Junior High School, (begun September 7, 2000,) to replace a dilapidated facility.

■ ¶ 15 The right to free public schools does not guarantee, on its face, equal expenditures per pupil. *Fair School Finance Council v. State*, 1987 OK 114, ¶ 52, 746 P.2d 1135, 1150 (wherein we used a rational basis standard to evaluate the classification used for expenditures per pupil.) We hold that a rational basis exists for the distinction made in these ordinances regarding which public school districts will receive the sales tax revenues. The apportionment method, (or "classification,") utilized by the City of Oklahoma City and the City of Lawton is not arbitrary or capricious, but is reasonable, proper and legitimate. Accordingly, we determine that Oklahoma City municipal ordinance No. 21,805 and Lawton municipal ordinance No. 99–29 are general in nature and do not violate Const. Art. 5, § 46. Since we determine that these ordinances are general in nature, we need not analyze the ordinances in the context of Const. Art. 5, § 59 because this provision pertains to special laws. *Reynolds v. Porter*, 1988 OK 88, ¶ 14, 760 P.2d 816, 822.

## "Educational Institutions"

■ ¶ 16 Petitioners' third constitutional argument is that public schools are "educational institutions" under Const. Art. 21, § 1[5] and thus only the State of Oklahoma can support them. We disagree. Const.Art. 10, § 26 concerns indebtedness of political subdivisions and clearly includes school districts as political subdivisions.[6] Although 11 O.S.2001, § 22–159 refers to school *systems* as opposed to school *districts*, we determine that the kind of "educational institution" intended by the legislature to be referenced in Const.Art. 21, § 1 is that of a state institution such as a mental health institution, school for the disabled or a center of higher education. These are the types of institutions we previously have recognized as being referenced by Const.Art. 21, § 1. *See, e.g., St. Louis–San Francisco Ry. Co. v. Morris*, 1930 OK 247, 288 P. 306 (state institution for treatment of tuberculosis); *Battles v. State ex rel. Oklahoma Commission for Crippled Children*, 1951 OK 313, 206 Okla. 444, 244 P.2d 320 (University Hospital); *Murrow Indian Orphans Home v. Childers*, 1946 OK 187, 197 Okla. 249, 171 P.2d 600 (Indian Orphans Home); *Montgomery v. State Industrial Commission*, 1942 OK 149, 124 P.2d 726 (state hospital for the insane). Accord-

---

5. Const. Art. 21, Const.Art. 21, § 1 provides:

"§ 1. **Establishment and support**
Educational, reformatory, and penal institutions and those for the benefit of the insane, blind, deaf, and mute, and such other institutions as the public good may require, shall be established and supported by the State in such manner as may be prescribed by law."

6. Const. Art. 26, § 26 provides in pertinent part:

" **§ 26. Indebtedness of political subdivisions-Assent of voters-Annual tax-Computation of amount of indebtedness**
(a) Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, . . . .
Provided, that if a school district has an absolute need therefore, . . . .

ingly, we hold that Const. Art. 21, § 1 is inapplicable to 11 O.S.2001, § 22–159, because public school districts are not state "educational institutions."

## AUTHORIZATION TO LEVY SALES TAXES

◼ ¶ 17 Petitioners argue that § 22–159 does not authorize municipalities to levy sales taxes to support public schools, because it does not explicitly reference or authorize a sales tax. We disagree. Adequately funded public public schools benefit the entire community in which they are located. As such, they serve a public purpose. Such public schools promote the general welfare, as well as economic development, economic security and prosperity for a municipality. *See, e.g., State ex rel. Brown v. City of Warr Acres,* 1997 OK 117, ¶ 20, 946 P.2d 1140, 1145 (wherein we held "public purpose" embodies a proposal that promotes the general welfare, economic security and prosperity of the city and its citizens); *Burkhardt v. City of Enid,* 1989 OK 45, ¶ 23, 771 P.2d 608, 614 (wherein we. held "economic development is a public purpose for which a municipality may expend public funds," and determined an institution of higher education provides a public benefit that fosters economic development in a community.) Therefore, we hold that in pursuit of a lawful public function, the City of Oklahoma City and the City of Lawton enacted the ordinances at issue herein. We further hold that 11 O.S.2001, § 22–159 allows municipalities the option to levy a sales tax for the legitimate public purpose of adequately financing public school systems located in whole or in part within the municipality's corporate limits. A municipality's economic development plan that encompasses improvement of the public school districts located within that municipality serves a legitimate public purpose as contemplated by Const. Art.10, § 14.

---

7. "Such indebtedness is not unconstitutional." *Morris v. City of Oklahoma City,* 1956 OK 202, ¶ 23, 299 P.2d 131, 136 (1956).
"Trusts for the benefit of governmental entities are 'charitable trusts'; and the common law recognizes that the purposes for which such

¶ 18 "Support," as used in § 22–159, implies financial support, which necessarily implies the power to levy taxes. Therefore, we determine that a sales tax levied by a municipality to support public school districts within its corporate boundary pursuant to 11 O.S.2001, § 22–159 is permitted under Const. Art. 10, § 26.

### Oklahoma City Metropolitan Area Public Schools Trust

◼ ¶ 19 The City of Oklahoma City has created the Oklahoma City Metropolitan Area Public Schools Trust (OCMAPST) to manage the sales tax revenues collected pursuant to ordinance no. 21,805 and is the beneficiary thereof. Petitioners argue that the OCMAPST attempts to circumvent Cont. Art. 10, § 26, which limits the indebtedness a city or school district may incur in any calendar year. We disagree. Any indebtedness payable solely from the trust estate and its revenues, incurred by "trustees of trusts for the furtherance of public functions," is constitutional. *Morris v. City of Oklahoma City,* 1956 OK 202, ¶ 23, 299 P.2d 131, 136–137. We stated therein, ". . . the fact that such trustees also are designated as regularly constituted authorities of a beneficiary governmental subdivision does not violate sections 26 and 27 of Article X of the Constitution." *Morris v. City of Oklahoma City,* 1956 OK 202, ¶ 23, 299 P.2d 131, 136–137, citing *"Board of County Commissioners of Oklahoma County v. Warram,* 285 P.2d 1034, 1035," syllabus ¶¶ 3, 7.

¶ 20 The plaintiff in *Morris* advanced an argument similar to Petitioners' herein, to-wit: that Trustees of a public charitable trust are "Agents of the State" and that since the indebtedness of the Trustees is of the type prohibited by Sections 23, 25, 26 and 27 of Art. 10, § 26 of the Constitution, they are void and the Public Trust Law purporting to authorize such indebtedness is unconstitutional. However, we held the contrary, in *Morris*[7] and do so again, today.

trusts may be established include a broad field of objectives for the benefit of a large class of the public or for lessening the burdens of government."
*Morris v. City of Oklahoma City,* 1956 OK 202, ¶ 23, 299 P.2d 131, 136 (1955), citing *Board of*

¶ 21 Accordingly, we reiterate our previous conclusion in prior cases that a public trust such as OCMAPST does not violate Art. 10, § 26. Since we determine the actions of the City of Oklahoma City pursuant to § 22–159 are in pursuit of a lawful public function, then the actions of OCMAPST, of necessity, also must be lawful.

### CONCLUSION

¶ 22 We hold that 11 O.S.2001, § 22–159 is a general law and is not a part of the Public Utility Bond Act. We determine 11 O.S.2001, § 22–159 to be constitutional, and therefore hold that the City of Oklahoma City municipal ordinance No. 21,805 and the City of Lawton municipal ordinance No. 99–29 are authorized sales tax proposals that rely on a constitutional statute and serve a valid public purpose. We conclude that the Oklahoma City Metropolitan Area Public Schools Trust is a lawful entity which performs a lawful and constitutional purpose for the City of Oklahoma City. Finally, we determine that all of Petitioners' arguments lack merit.

**ORIGINAL JURISDICTION ASSUMED; DECLARATORY RELIEF DENIED; WRITS OF MANDAMUS AND PROHIBITION DENIED.**

Concur: HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, SUMMERS (by separate writing), BOUDREAU, JJ.

Concurs in result: KAUGER (by separate writing) (joins SUMMERS, J), J.

Dissents: OPALA, (by separate writing) J.

*County Commissioners of Oklahoma County v. Warram*, 285 P.2d 1034, 1955 OK 198, ¶ 0, (syllabus ¶ 3), 285 P.2d 1034, 1035 (syllabus, ¶ 3).

1. Title 11 O.S.2001 § 22–159 provides:

"Municipalities may support any public school system located in whole or in part within the corporate limits of the municipality, including without limitation by the expenditure of municipal revenues for construction or improvement of public school facilities. In furtherance of municipal support for any public school system, as authorized by this section, the municipal governing body may take all actions necessary to effectuate such support.".

KAUGER, J., concurring in result.

¶ 1 I agree with the majority that a municipal vote of the public in support of public schools pursuant to 11 O.S.2001 § 22–159[1] should be upheld. I write separately to emphasize that because the levy has been voted upon by the people, it does not present the constitutional debt limitations problem associated with our decision in *Oklahoma City Urban Renewal Auth. v. Medical Technology & Research Auth. of Oklahoma,* 2000 OK 23, ¶ 13, 4 P.3d 677.

¶ 2 In *Medical Technology*, we considered the nature and constitutionality of tax increment financing utilizing *ad valorem* financing. In doing so, we determined that although the taxing scheme was not facially invalid, it was subject to voter approval under the Okla. Const. art. 10, § 26.[2] Here, the step missing in *Medical Technology* is supplied—the election process has taken place and the voters have spoken in favor of supporting public schools.

SUMMERS, J., Concurring and joined by KAUGER, J.

¶ 1 I concur in the Court's opinion with these additional observations.

¶ 2 Section 22–159 states that municipalities may support a public school "by the expenditure of municipal revenues for construction or improvement of public school facilities." Municipal sales tax revenue is one type of municipal revenue. See, e.g., 11 O.S.Supp.1992 § 22–154, (sales tax is a municipal tax revenue that may be used as

2. The Okla. Const. art. 10, § 26 provides in pertinent part:

"(a) Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein ..."

payment or security for municipal utility revenue obligations). The Legislature may confer upon a municipality the power to assess and collect a sales tax for the purpose of the municipality. Okla. Const. Art. 10 § 20.[1]

¶ 3 The municipal tax must be imposed by a general law and for a public purpose. Okla. Const. Art. 10 § 14, *State ex rel. Brown v. City of Warr Acres,* 1997 OK 117, 946 P.2d 1140; *Burkhardt v. City of Enid,* 1989 OK 45, 771 P.2d 608, 610–611. The statute at issue here is applicable to all school districts, and is thus a general law. *Stanolind Pipe Line Co. v. Tulsa County Excise Bd.,* 1938 OK 248, 80 P.2d 316, 318. The maintenance of a free public school is a duty placed upon the Legislature. Okla. Const. Art. 13 § 1.[2] Tax revenue used to maintain a free public school is a tax for a public purpose.

¶ 4 The Legislature may not enact statutes that **compel** a political subdivision to expend its tax revenues for a state function when the political subdivision is funded from ad valorem taxes. *State ex rel. Jordan v. City of Bethany,* 1989 OK 30, 769 P.2d 164; *State ex rel. Dept. of Human Services v. Malibie,* 1981 OK 18, 630 P.2d 310. However, the Legislature may provide that a municipality may, if it so decides, expend funds for a school district. In 1910 we made the following observation:

> What, therefore, the Wetmore Case and the Law Case decided was that the erection of schoolhouses within the corporate limits of a municipality was justly to be regarded as a municipal affair, and that the city, therefore, as such, could create a bonded indebtedness for such like purposes, even though power to do the same thing was, under the general school system of the state, vested in a school district, which, while occupying the same territory as that of the city, was still in point of law a distinct corporate entity. **It follows, therefore, that the declaration of this court that the issuing of bonds for the building of schoolhouses by a city is a municipal affair constitutes in no sense a negation of the fact that another corporate entity—the school district—may, under the general school system of the state, do the same thing for the same purpose.** Moreover, it should be finally emphasized that the power of a municipality in this regard can only run current with, and never counter to, the general laws of the state touching the common school system. To such general laws, if conflict arises, all municipal charters must be subservient.
>
> **As the Legislature of this state did not see fit to confer on cities of the class entitled to frame charters for their own government any power to legislate on matters pertaining to the public school system of the state, it follows that the attempt on the part of the city of Ardmore by its charter to vest such authority in another board than that provided by the general law must fail.**

*Board of Education of City of Ardmore v. State,* 1910 OK 118, 109 P. 563, 566–567, (emphasis added).

We observed in this opinion that both a school board and a municipality did, in theory, possess concurrent power, and could provide funds to maintain a school, but that as of 1910 the Oklahoma Legislature had not granted that power to municipalities such as Ardmore. The Legislature has now done so in § 22–159, and a municipality exercising its discretion to expend municipal funds for a school district does not violate the Oklahoma Constitution.

¶ 5 A tax is not a debt. *City of Sapulpa v. Land,* 1924 OK 92, 223 P. 640, 644. The amount of debt a school district creates is based upon a percentage of the valuation of the taxable property therein. Okla. Const. Art. 10 § 26. Nothing before us suggests that any school district has exceeded this constitutional limitation.

---

1. Okla. Const. Art. 10 § 20:

   The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes.

2. Okla. Const. Art. 13 § 1:

   The Legislature shall establish and maintain a system of free public schools wherein all children of the State may be educated.

¶ 6 A governmental subdivision may be the beneficiary of a public trust. *Morris v. City of Oklahoma City,* 1956 OK 202, 299 P.2d 131. In *Arthur v. City of Stillwater,* 1980 OK 64, 611 P.2d 637, we discussed a sales tax to be collected by a municipality for the purpose of a public trust that would issue bonds and then use the tax revenue to pay its obligations. Although we explained that a statute required the tax revenue to be placed in the municipality's general revenue fund and then appropriated for the trust, as opposed to going to the trust as an unappropriated amount, we rejected the claim that the trust indebtedness created by the bonds violated Article 10 § 26.of the Oklahoma Constitution. *Id.* 611 P.2d at 641–642.

¶ 7 In sum, nothing in the Oklahoma Constitution prohibits the Legislature from allowing a municipality to raise local tax revenue for the benefit of a school or a municipal improvement trust that then acts to improve a school within that municipality. None of the challenges in this case show either a tax or a public indebtedness that is unconstitutional.

OPALA, J., dissenting.

¶ 1 I dissent from the court's pronouncement, which places its unqualified imprimatur upon the taxation regime authorized by the provisions of 11 O.S.2001 § 22–159.[1] The statute under today's scrutiny clearly *violates* the constitutional prohibition against *special laws regulating the affairs of school districts.* This is so because it *facially* fails *equally to affect* all school districts so as to *operate uniformly* throughout the state; rather, it sets apart for favorable treatment *only* a subclass composed of those districts within whose territory lies, in whole or in part, a municipality which would *opt* to levy a tax and share its proceeds. Art. 5 § 46, Okl. Const.[2]

## I

### THE LEGISLATION IN CONTROVERSY

¶ 2 Section 22–159 of the Oklahoma Municipal Utility Revenue Bond Act[3] allows a municipality to support any public school system located either in whole or in part within its corporate limits by raising revenue to be provided for the construction or improvement of public school facilities.[4] Acting under the authority of this legislation, two cities, Oklahoma City and Lawton, both respondents herein, have passed ordinances for the levy of taxes to support public schools lying (entirely or partially) within the boundaries of the two municipalities.

## II

### THE SEARCH FOR CONSTITUTIONAL INFIRMITIES PRESENT IN THIS CONTROVERSY IS TO BE FOCUSED AND MUST CONCENTRATE UPON THE STANDARDS OF ART. 5 § 46, OKL.CONST.

¶ 3 The court must test the § 22–159 taxation regime's constitutional orthodoxy by the pertinent standards prescribed in Art. 5 § 46, Okl. Const.[5] That section's terms *absolutely and unequivocally invalidate* special (or local) laws on any of the 28 subjects which stand included in the § 46 litany of

1. The terms of 11 O.S.2001 § 22–159 are:

   Municipalities may support any public school system located in whole or in part within the corporate limits of the municipality, including without limitation by the expenditure of municipal revenues for construction or improvement of public school facilities. In furtherance of municipal support for any public school system, as authorized by this section, the municipal governing body may take all actions necessary to effectuate such support.

2. The pertinent terms of Art. 5 § 46, Okl. Const. are:

   The Legislature shall not ... pass any ... special law ...
   * * *
   *Regulating the affairs of* counties, cities, towns, wards, or *school districts....*
   (emphasis added).

3. 11 O.S.2001 § 22–150 *et seq.*

4. For the terms of 11 O.S.2001 § 22–159 see *supra* note 1.

5. For the pertinent terms of Art. 5 § 46, Okl. Const., see *supra* note 2.

prohibitions.[6]  A subject that is listed in § 46 may not be disuniformly dealt with by any enactment.  The terms of § 22–159 clearly offend the § 46 interdiction of *special (or local) laws*[7] on one of the listed subjects—that of regulating the affairs of school districts.  The legislature may not deal with any aspect of *public school management*—a subject which clearly embraces the district's *financing function*—other than by law whose *application will have like impact on each district.*[8]

¶ 4 Today's pronouncement does not reach the critical and dispositive issue before the court.  Focusing *narrowly* and *exclusively* on § 22–159's effect upon *municipalities,* the court *ignores* the cited statute's plainly disuniform impact on *school districts,* whose *regulation* appears in the litany of subjects on which *no special law* is authorized.

¶ 5 A canonical § 46 analysis requires that the legislation to be tested for orthodoxy conform to the fundamental law's *symmetry and uniformity* mandate upon **every prohibited subject.**  An enactment which meets the § 46 test for **one subject of the multiple prohibitions but disuniformly impacts another** cannot pass constitutional muster.

## III

### THE ASYMMETRY CREATED BY TODAY'S PRONOUNCEMENT

¶ 6 Section 46 is **the Constitution's command for evenhanded statewide applica**tion of laws on certain enumerated subjects.  That application allows no subclass to be left at a disadvantage.  The § 46 *symmetry* and *uniformity* norms require that legislation dealing with revenue sources for schools *impact all school districts alike* and *afford* each of them a meaningful opportunity to share in the capture of revenue authorized for tapping.[9]

¶ 7 Section 22–159's formula for access to the there-authorized revenue stream is based on two factors: (a) a school district's geographical characteristics (to be evaluated by the municipal-subdivision presence within the district's territorial boundaries) and (b) the affected municipality's creation of the revenue source by imposition of a tax.  These characteristics are *facially* incapable of implementation by *uniform, evenhanded access to the revenue source throughout the state.*  Nor do these characteristics bear any rational relation to some legislatively declared or textually demonstrable need for revenue.  The taxation regime prescribed by § 22–159 creates a built-in mechanism of impermissible asymmetry for school district financing function by patently *excluding* from its revenue stream **two disadvantaged subclasses:** (a) *purely rural school districts*—those which have **no** municipal territories within their boundaries and (b) *districts* in which, although municipalities are situated, in whole or in part, *no tax was levied* to provide a revenue stream.

**6.** *Reynolds v. Porter,* 1988 OK 88, 760 P.2d 816, 822; *State of Oklahoma ex rel. Nesbitt v. District Court of Mayes County,* 1967 OK 228, 440 P.2d 700, 705–706 (noting that Art. 5 § 46 prohibits special or local laws prescribing the powers and duties of county officers, the court held that nothing in Oklahoma's fundamental law authorizes the legislature to impose upon an arbitrarily selected group of county officials duties which do not stand imposed upon like officials in other counties of the state); *Tulsa Co. F.O.P., Lodge No. 188 v. Board of County Commissioners of Tulsa Co.,* 2000 OK 2, ¶ 10, 995 P.2d 1124, 1135 (Opala, J., dissenting); *Nelson v. Nelson,* 1998 OK 10, 954 P.2d 1219, 1232 (Opala, J., dissenting).

**7.** Special laws apply to less than an entire class of similarly situated persons; those who are singled out by the law receive treatment which differs from that accorded by the remainder of the class.  *Reynolds v. Porter,* 1988 OK 88, 760 P.2d 816, 822; *Maule v. Independent School Dist. No. 9,* 1985 OK 110, ¶ 12, 714 P.2d 198, 203 n. 30; *Great Plains Federal S & L Assn. v. Dabney,* 1993 OK 4, ¶ 2, 846 P.2d 1088, 1095–96 (Opala, J., concurring).

**8.** *Maule, supra* note 7 at 203–204 (citing *Ind. School Dist. No. 89 of Okla. Co. v. Okl. City Fed. of Tchrs.,* 1980 OK 89, ¶ 1, 612 P.2d 719, 724–725 (Opala, J., dissenting)); *Reynolds, supra* note 7 at 822.

**9.** In *Fair School Finance Council of Oklahoma, Inc. v. State,* 1987 OK 114, ¶ 64, 746 P.2d 1135, 1150, the court holds that although the state is not under a mandate to provide equal per-pupil funding, it does stand under a constitutional command to treat all districts equally for access to existing revenue sources.

¶ 8 Because § 22–159 can benefit only less than the entire statewide class of all school districts, it is underinclusive and hence "special." [10] A statute collides with the § 46 symmetry requirements when it targets for different treatment less than a whole class embraced within one of that section's prohibited subjects.

### No Explicitly Prohibited § 46 Subject May Be Tested By § 59 Standards

¶ 9 Conformity to the standards of Art. 5 § 59, Okl. Const.,[11] presents a legal issue entirely unrelated to the § 46 [12] uniformity mandate. Tests used for measuring a law's validity under the standards of § 46 are distinct from those for gauging a statute's § 59 orthodoxy. While the *former prohibits* the passage *of any special* (or local) law on a variety of textually identified subjects, *regardless of whether a suitable general law could or could not have been crafted,* the *latter* section merely calls for statutes to be cast in the form of general laws which would appear to have uniform application.[13] Within the meaning of § 59 a special law is considered permissible if a general law could not be fitted.[14] Not so under the standards of § 46. That section's mandate is absolute, unequivocal and unqualified;[15] it defies testing by the standards of § 59. If the founding drafters did not intend to set aside the named § 46 subjects for much tougher

scrutiny, that section would have been totally redundant. Without its inclusion, § 59 would have covered every subject of legislation, including those that are now singled out by their listing in § 46.

¶ 10 Our own jurisprudence, no less than the legislature's enactments, must faithfully conform to the fundamental law's prohibition against disuniform (or nonuniform) laws on prohibited subjects.[16]

### IV

### SUMMARY

¶ 11 A prohibited subject in the § 46 litany may not be disuniformly addressed within any legislative enactment. Section 46 *absolutely, unqualifiedly and unequivocally invalidates all local or special legislation on prohibited subjects.*[17] Today's pronouncement, which passes § 22–159 for § 46 orthodoxy, confines the statute's constitutional testing to the law's effect on *"municipalities,"* but does not extend its probe to gauging the law's effect on regulation of *school districts'* affairs. The court's methodology entirely erases from the list of subjects prohibited by § 46 *the category most critical for application to this case*—that of regulating school district affairs.

¶ 12 If I alone were testing today the § 46 conformity of § 22–159's taxation regime, I

---

10. When a statute's sweep embraces less than a whole class, it is underinclusive in the § 46 sense. For a detailed explanation of the latter § 46 classification flaw see *Reynolds, supra* note 7 at 822.

11. The terms of Art. 5 § 59, Okl. Const., are:
    Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted.

12. For the terms of Art. 5 § 46, Okl. Const., see *supra* note 2.

13. *Reynolds, supra* note 7 at 822; *Nesbitt, supra* note 10 at 703 syl. 1.

14. When testing a statute's constitutional orthodoxy by the standards prescribed by § 59, a three-prong inquiry is to be made: (1) Is the statute a special or general law? (2) If the act is a special law, could a general law be made

applicable? and (3) If a general law may not be made applicable, does the statute pass muster as a permissible special law? *Ross v. Peters,* 1993 OK 8, 846 P.2d 1107, 1119; *Reynolds, supra* note 7 at 822.

15. The distinct characteristics of § 46, which set it far apart from § 59, are eloquently taught by two early post-statehood decisions. Their reading is a must for all those who wish to claim familiarity with the subject. *Chickasha Cotton Oil Co. v. Lamb & Tyner,* 1911 OK 68, ¶¶ 4–12, 114 P. 333, 334–36; *Diehl v. Crump,* 1919 OK 62, ¶ 6, 179 P. 4, 6.

16. *Maule, supra* note 7 at 203–204 (citing *Ind. Schl. Dist. No. 89,* at 725–26 (Opala, J., dissenting)); *Reynolds, supra* note 7 at 822.

17. Although directed to the legislature, the terms of Art. 5 §§ 46 and 59 are equally binding on the courts. *Reynolds, supra* note 7 at 822.

would conclude that the cited statute offends that constitutional provision's mandated norms of uniformity, symmetry and even-handed treatment. This is so because § 22–159 clearly runs counter to the constitutional prohibition against those laws which deal with *the affairs of school districts* by regulating their financing in a manner that does not uniformly impact all the districts.

¶ 13 I would today pronounce a death sentence for the provisions of § 22–159. The section's demise should be made coincidental with the date of the court's mandate in this cause. Fundamental-law jurisprudence of Oklahoma (and that of the U.S.) teaches that judicial condemnation of an unconstitutional tax measure need not be given a fully retrospective (or common-law) sweep; it may be accorded prospective application by whose terms revenue captured in advance of invalidation could be retained.[18]

---

**18.** This appears to be sanctioned by *First of McAlester Corp. v. Oklahoma Tax Com'n,* 1985 OK 52, ¶ 35, 709 P.2d 1026, 1036, as well as by the U.S. Constitution. *See Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364–365, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932); *Cipriano v. City of Houma,* 395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969).