Dear Senator Easley,
¶ 0 This office has received your requests for an official Attorney General Opinion in which you ask, in effect, the following question:
 Do the amendments to Article X, Section 8C of the Oklahoma Constitution which were approved by the voters on November 2, 2004 apply retroactively to the fair cash value of homestead property on January 1, 2004, or prospectively to the fair cash value of homestead property on January 1, 2005 and thereafter?
 Article X, Section 8C Limit on Fair Cash Value on Homestead
A. History
¶ 1 The amendments you ask about occurred in 2004; however, we must first look at the history of the constitutional provision to understand the 2004 amendments. On November 5, 1996, the people of Oklahoma adopted State Question 677 adding Section 8C to Article X of the Oklahoma Constitution.[1] Section 8C limited the fair cash value on the homestead of certain ad valorem taxpayers. To apply for homestead exemption an individual must be 65 years of age or older, have a gross household income of $25,000 or less, and own and occupy homestead property.[2] Once approved by the county assessor, the fair cash value on the real property remains constant and does not increase as long as the individual continues to meet the constitutional requirements.[3]
¶ 2 The Oklahoma Legislature amended and enacted several statutes to implement the 1996 constitutional provision.[4]
Specific to discussion here is 68 O.S. Supp. 2004, § 2890.1[68-2890.1][5] which provides in pertinent part:
 A. The application for a limit on the fair cash value of homestead property as provided for in Section 8C
of Article X of the Oklahoma Constitution shall be made on or before March 15 or within thirty (30) days from and after receipt by the taxpayer of a notice of valuation increase, whichever is later. The application shall be made upon a form prescribed by the Oklahoma Tax Commission, which shall require the taxpayer to certify as to the amount of gross household income. As used in Section 8C of Article X
of the Oklahoma Constitution, "gross household income" shall be as defined in Section 2890 of this title. Upon request of the county assessor, the Oklahoma Tax Commission shall assist in verifying the correctness of the amount of the gross income.
Id. (emphasis added).
¶ 3 New applications for this exemption must be filed on or before March 15 or within 30 days after receipt of a notice of increase in valuation. Id. Once an application is approved, subsection B of Section 2890.1 provides guidance in subsequent years:
 B. For persons who have previously qualified for the limitation on the fair cash value of homestead property as provided for in Section 8C of Article X
of the Oklahoma Constitution, no annual application shall be required in order to be subject to the limitation. However:
 1. Any such person whose gross household income in any calendar year exceeds Twenty-five Thousand Dollars ($25,000.00) shall notify the county assessor and the limitation shall not be allowed for the applicable year; and
 2. Any such person who makes improvements to the property shall notify the county assessor and the improvements shall be assessed in accordance with law by the county assessor and added to the assessed value of the property as provided in Section 8C of Article X of the Oklahoma Constitution.
Id.
¶ 4 The Oklahoma Tax Commission promulgated administrative rules to assist county assessors in implementing this constitutional provision,[6] and developed a form for taxpayers to apply for this property valuation limitation.[7]
B. 2004 amendment to Article X, Section 8C of the OklahomaConstitution
¶ 5 Oklahoma voters amended Article X, Section 8C on November 2, 2004 by changing the flat $25,000 statewide limitation for gross household income to a county by county estimated median income limitation determined by the United States Department of Housing and Urban Development:[8]
 B. The income threshold for the gross household income from all sources for an individual head of household under this section shall not exceed the amount determined by the United States Department of Housing and Urban Development to be the estimated median income for the preceding year for the county or metropolitan statistical area which includes such county. The Oklahoma Tax Commission shall provide such information to each county assessor each year as soon as such information becomes available.
Id.
 The Anatomy of a Property Tax Statement
¶ 6 The starting date for an ad valorem tax statement is January 1 of each year.[9] On that date all taxable real and personal property is appraised at fair cash value and assessed by the county assessor,[10] or by the Oklahoma Tax Commission for public service corporation property.[11] If the fair cash value has increased from the previous year the county assessor must give the taxpayer notice of the increased value and provide an opportunity to appeal.[12]
¶ 7 Next the county assessor applies homestead exemptions[13] and the "senior valuation limitation."[14] Applications received on or before March 15 of the year or within 30 days from and after receipt by the taxpayer of notice of valuation increase, whichever is later and approved, will be applied to the January 1 fair cash value of the real property, and an adjustment will be made by the county assessor.[15] Applications received and approved after these dates will be applied to the fair cash value of the real property on the following January 1.[16]
¶ 8 The county assessor prepares an assessment roll which lists all real and personal property in the county at its net assessed value, and delivers this roll to the county board of equalization no later than the fourth Monday in April.[17] The county board of equalization meets to correct, adjust, and equalize the assessment rolls to conform to fair cash value as defined by law,[18] and returns the equalized assessment rolls to the county assessor.[19]
¶ 9 The county assessor then prepares an annual abstract (summary) of assessed valuations on all taxable property within the county and transmits the abstract to the Oklahoma Tax Commission by June 15th.[20] The abstract is forwarded to the State Board of Equalization which meets to certify each county abstract.[21]
¶ 10 The county assessor prepares and files an abstract with the county excise board containing the assessed values of all taxable property in the county as certified by the State Board of Equalization.[22] The county excise board determines the tax levies and certifies the levies to the county assessor.[23] No later than October 1, the county assessor prepares the tax rolls,[24] extends the tax levies to the tax rolls (determines the tax due), and delivers the completed tax rolls to the county treasurer.[25] The county treasurer prepares and mails the tax statements,[26] which taxes are "due and payable on the first day of November."[27]
 Discussion
¶ 11 This office previously issued two Attorney General Opinions regarding Article X, Section 8C of the Oklahoma Constitution.[28] In discussing the construction of this provision, we stated:
 A constitutional provision is to be applied to give effect to the intent of the people voting on it. The intent is determined by the provision itself, and where unambiguous, courts are not at liberty to search beyond the instrument for its meaning. Neither courts nor legislatures have the authority to augment or diminish the rights granted by the Constitution. Statutes and the Constitution "must be construed as a consistent whole in harmony with common sense and reason and every portion thereof should be given effect if possible. Similarly, construction of such provisions in pari materia with each other should be construed together with other statutes on the same subject as part of a coherent system."
A.G. Opin. 01-36, at 167 (citations omitted).
¶ 12 The Oklahoma Legislature passed Senate Joint Resolution 30 during the 2004 Legislative session.[29] This provided for a vote by the people on an amendment to Article X, Section 8C of the Oklahoma Constitution. The amendment did not provide that the new gross household income limitation would be retroactive to the January 1, 2004 fair cash value of real property.[30] "The general rule is that statutes have prospective operation unless the purpose and intent of the Legislature to give them a retroactive effect is expressly declared or necessarily implied from the language used. In case of doubt, the doubt should be resolved against retrospective effect." Barnhill v. MultipleInjury Trust Fund, 37 P.3d 890, 898 (Okla. 2001) (citations omitted).
¶ 13 Ad valorem tax bills are "due and payable on the first day of November."[31] The statewide election that approved the constitutional amendment was held on November 2, 2004 and certified by the Oklahoma State Election Board on November 9, 2004.[32] Absent a provision in the amendment declaring it was retroactive to the January 1, 2004 fair cash value, the new provision should be applied to the fair cash value of qualified homestead property on January 1, 2005.
¶ 14 Finally, the statute which allows an individual to apply to limit fair cash value on a homestead requires the application "shall be made on or before March 15 or within thirty (30) days from and after receipt by the taxpayer of a notice of valuation increase."[33] "Words used in any statute are to be understood in their ordinary sense." 25 O.S. 2001, § 1[25-1]; seeNeer v. State ex rel. Okla. Tax Comm'n, 982 P.2d 1071, 1078
(Okla. 1999) (emphasis added) (citation omitted). "`Shall' signifies a mandatory directive or command." Grimes v. City ofOklahoma City, 49 P.3d 719, 724 (Okla. 2002). Applying a retroactive date to this constitutional amendment would nullify the statutory application to limit fair cash value on a homestead, and all the reviews and approvals by the county assessor, county board of equalization, State Board of Equalization, county excise board and county treasurer.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The amendments to Article X, Section 8C of the Oklahoma Constitution which were approved by the voters on November 2, 2004 and certified by the Oklahoma State Election Board on November 9, 2004, are to be applied prospectively to the fair cash value of homestead property on January 1, 2005 and thereafter. 2005 Okla. Sess. Laws ch. 1, § 114 (amending 68 O.S. Supp. 2004, § 2890.1[68-2890.1]; 68 O.S. 2001, § 2913(A)).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 DAVID L. KINNEY Assistant Attorney General
[1] See Okla. Const. art. X, § 8C.
[2] Okla. Const. art X, § 8C(A). See also 68 O.S. Supp.2004, § 2888[68-2888] (qualifications for Oklahoma homestead property for purposes of ad valorem taxes); 68 O.S. 2001, § 2889[68-2889] (exemption from tax).
[3] Okla. Const. art X, § 8C.
[4] See 68 O.S. Supp. 2004, § 205[68-205](C)(7) (the Oklahoma Tax Commission may furnish information to a "county assessor to determine the amount of gross household income"); 68 O.S. 2001,§ 2819[68-2819] (determination of taxable value of property by county assessors).
[5] The Oklahoma Legislature amended Section 2890.1 of Title 68 in 2005 with an emergency effective date of March 15, 2005. See
2005 Okla. Sess. Laws ch. 1, § 114.
[6] See OAC 710: 10-1-4; 10-4-9.
[7] See OTC Form 994, App. for Prop. Valuation Limitation Additional Homestead Exemption (2004).
[8] See S.J. Res. 30, 49th Leg., 2d Sess.; Minutes of the State Election Board at its Meeting, Nov. 9, 2004; Letter from Michael Clingman, Secretary, State Election Bd., to Brad Henry, Governor of Oklahoma (Nov. 10, 2004).
[9] See Okla. Const. art X, § 8(A); 68 O.S. Supp. 2004, §2817[68-2817](A), (B); 68 O.S. 2001, § 2831[68-2831](A).
[10] See 68 O.S. 2001, § 2819[68-2819].
[11] See 68 O.S. 2001, § 2848[68-2848](A); see, e.g., Okla. Const. art X, § 8(A)(3); 68 O.S. 2001, § 2847[68-2847].
[12] 68 O.S. Supp. 2004, § 2876[68-2876](A); see also A.G. Opin. 03-23, at 130 (detailed explanation of the appeals process).
[13] See 68 O.S. Supp. 2004, § 2892[68-2892](A).
[14] See 2005 Okla. Sess. Laws ch. 1, § 114 (amending 68O.S. Supp. 2004, § 2890.1[68-2890.1](A)); see also OAC 710: 10-1-4(1) (defining "senior valuation limitation").
[15] See 68 O.S. Supp. 2004, § 2892[68-2892](A); OAC 710: 10-1-4(4).
[16] See n. 15.
[17] See 68 O.S. 2001, § 2842[68-2842](A), (B).
[18] See 68 O.S. 2001, § 2863[68-2863](A).
[19] See 68 O.S. 2001, § 2867[68-2867](A).
[20] See n. 19.
[21] See 68 O.S. 2001, § 2864[68-2864](A).
[22] See 68 O.S. 2001, § 2867[68-2867](D).
[23] See 68 O.S. 2001, §§ 3006[68-3006]; 3007; 3014.
[24] See 68 O.S. 2001, § 2868[68-2868](A).
[25] See 68 O.S. 2001, § 2869[68-2869](A), (B).
[26] See 68 O.S. 2001, § 2915[68-2915](B).
[27] 68 O.S. 2001, § 2913[68-2913](A).
[28] See A.G. Opins. 01-36; 97-27.
[29] See S.J. Res. 30, 49 th Leg., 2d Sess.
[30] See n. 28.
[31] 68 O.S. 2001, § 2913[68-2913](A).
[32] See n. 8.
[33] 2005 Okla. Sess. Laws ch. 1, § 114(A) (amending 68 O.S.Supp. 2004, § 2890.1[68-2890.1](A)) (emphasis added).